**Richard F. DAVET**

v.

**Enrico MACCARONE, Samuel Schlageter, Salvatore DeCesare, Robert A. DiMeo and Time Plating, Inc.**

Civ. A. No. 89–0110 P.

United States District Court,
D. Rhode Island.

Oct. 8, 1991.

Kevin Brill, Providence, R.I., for plaintiff.

Gerard DeCelles, Providence, R.I., for defendants DiMeo and Time Plating, Inc.

Marc DeSisto, Providence, R.I., for defendants Maccarone, Schlageter and DeCesare.

## MEMORANDUM AND ORDER

PETTINE, Senior District Judge.

The plaintiff brought this action against the City of Cranston, three police officers (Enrico Maccarone, Samuel Schlageter and Salvatore DeCesare), and Robert A. DiMeo, a civilian, and his corporation, Time Plating, Inc. Since the complaint includes a false arrest allegation, federal jurisdiction is premised on 42 U.S.C. § 1983; pendent to this case are state claims of malicious prosecution and false arrest.

I ruled that none of the officers were entitled to qualified immunity and directed a verdict for the plaintiff on all of the § 1983 claims and against DiMeo on the state claim of false arrest; since the claim against him was predicated on joint liability with the defendant officers, he, as a civilian, had no immunity defense.

Only the question of damages for the false arrest and liability for malicious prosecution were submitted to the jury; it returned verdicts for the defendants, i.e., the jury found that DiMeo was not liable and that the plaintiff suffered no damages by reason of the false arrest.

The plaintiff's sole exception to the verdict is on the question of damages:

> ... the jury did not award any damages. It is from this verdict that Davet requests a new trial or JNOV [judgment notwithstanding the verdict].

Plaintiff's Supplemental Memorandum at 5.

The defendants renew the motion for a directed verdict which they made at the conclusion of the plaintiff's case.

### I.

Mr. Davet, president of Ringco Manufacturing Co., Inc., engaged in a dispute with Robert A. DiMeo, president of Time Plating, Inc., concerning the plating of certain jewelry. As a consequence, Davet stopped payment on a check remitted as payment for said work. The long and short of it all was that DiMeo threatened Davet with criminal prosecution for issuing a bad check if he was not paid. The check was not honored, and DiMeo brought the mat-

ter to the attention of the police department. Without detailing the written and verbal exchange between the parties, which is not relevant to the issue at stake, it suffices to say Davet was eventually arrested while attending a jewelry show in Providence. He spent one night in jail before posting bail. All criminal charges against him were eventually dismissed by the State Attorney General.

At trial, Davet described the anguish and anxiety he experienced while lying awake in a "filthy prison cell." No evidence of physical symptomatology was introduced; this absence of physical consequences raised the question whether, under Rhode Island law, there is an entitlement to damages for a tort which causes emotional harm but does not trigger any physical impairment. Without resolving the issue, I gave the benefit of the doubt to the plaintiff and instructed the jurors that they could make an award for emotional harm; they were told that Mr. Davet could recover "for physical pain that he might have suffered, mental pain which may have been caused by false arrest, emotional anguish, psychological distress." In so instructing, I reasoned that if I was in error and the jury did award damages, the error could easily be remedied post-trial.

## II.

In *Freeman v. Package Machinery Co.,* 865 F.2d 1331, 1333 (1st Cir.1988), Judge Selya, writing for the Court, set forth a learned exegesis on the standards to be applied when considering a motion for a new trial.

"In the federal system, a trial judge cannot displace a jury's verdict merely because he disagrees with it or would have found otherwise in a bench trial. Absent error of law ..., the judge's prerogative to set aside a verdict crystallizes only if 'it is quite clear that the jury has reached a seriously erroneous result.' *Borras v. Sea–Land Service, Inc.,* 586 F.2d 881, 887 (1st Cir.1978) (citation omitted). In our litany of cases, we have come to refer to this criterion as the 'manifest miscarriage of justice' standard. *E.g.,*

*Wagenmann v. Adams,* 829 F.2d 196, 200–201 (1st Cir.1987); *Insurance Co. of North America v. Musa,* 785 F.2d 370, 375 (1st Cir.1986); *Valm v. Hercules Fish Products, Inc.,* 701 F.2d 235, 237 (1st Cir.1983); *Hubbard v. Faros Fisheries, Inc.,* 626 F.2d 196, 200 (1st Cir. 1980)."

*Milone v. Moceri Family, Inc.,* 847 F.2d 35, 37 (1st Cir.1988). Put another way, the district court may order a new trial only if it is convinced that the jury's verdict is "against the clear weight of the evidence, or is based upon evidence which is false, or will result in a clear miscarriage of justice...." *Coffran v. Hitchcock Clinic, Inc.,* 683 F.2d 5, 6 (1st Cir.), *cert. denied,* 459 U.S. 1087, 103 S.Ct. 571, 74 L.Ed.2d 933 (1982). The mere fact that a contrary verdict may have been equally—or even more easily—supportable furnishes no cognizable ground for granting a new trial. If the weight of the evidence is not grotesquely lopsided, it is irrelevant that the judge, were he sitting jury-waived, would likely have found the other way. And if the judge rejects a new trial motion, we review his application of this hard-to-achieve standard solely for abuse of discretion. *See Milone,* 847 F.2d at 37; *Real v. Hogan,* 828 F.2d 58, 61 (1st Cir. 1987).

In *Mitchell v. Evelyn C. Brown, Inc.,* 310 F.2d 420, 424 (1st Cir.1962), the Court, in reviewing a damage award in an admiralty case, said that the circumscription of a clearly erroneous standard did not foreclose vacating a damage award if it was left "with the definite and firm conviction that a mistake has been committed."

The foregoing legal standard is applicable only in the absence of an error of law; therefore, the first issue to be resolved is whether or not damages can be awarded for pure emotional distress. If the answer is "yes", then an analysis must be made guided by the teachings of *Freeman* and *Mitchell, supra.*

█ It is clear that for § 1983 claims, federal, not state law applies and there is no need to show physical symptoms to re-

cover for emotional distress.[1] ... "[D]amages in tort cases are designed to provide 'compensation for injury caused to plaintiff by defendant's breach of duty.' (citations omitted). To that end, compensatory damages may include not only out-of-pocket loss and other monetary harms, but also such injuries as 'impairment of reputation ..., personal humiliation, and mental anguish and suffering.' " *Memphis Community School District v. Stachura,* 477 U.S. 299, 306–07, 106 S.Ct. 2537, 2542–43, 91 L.Ed.2d 249 (1986). It follows that even though the plaintiff in this case suffered no physical injuries, his emotional harm appears to be compensable.

█ Unfortunately, it is not that simple. I recognize the civil wrong committed. The right to life, liberty, freedom and independence are quintessential privileges bestowed upon us by our Constitution. The plaintiff was falsely arrested and so, indeed, was deprived of his precious liberty. It will be no surprise should he grimace in pain and express amazement when told that the anguish he suffered while caged in a prison cell cannot be assuaged with a monetary award because damages cannot be awarded for a civil rights violation based merely on the "abstract" value or "importance of the constitutional right." *Memphis Community School District, supra.*

Particularly pertinent to the case at issue is *Magnett v. Pelletier,* 488 F.2d 33 (1st Cir.1973). Back in 1978, the First Circuit stated that in a civil rights action the plaintiff may be awarded damages for just the "loss of his civil rights or purely mental suffering." *Id.* at 35. We now see that *Memphis Community School District* has modified this, but the balance of the Court's teaching as explicated in *Perez v. Rodriguez Bow,* 575 F.2d 21 (1st Cir.1978) is persuasive decisional language.

In the present case, the only evidence of actual injury is plaintiffs' own statements that they experienced some psychological discomfort as a result of their suspensions. There is no evidence of loss of employment or employment opportunities, or delay in meeting academic requirements, or significant harm to plaintiffs' reputation in the community, or medically cognizable psychological distress. In such circumstances courts are not inclined to award compensatory damages for general mental distress. *See Stolberg v. Members of Bd. of Trustees for State Col. of Conn.,* 474 F.2d 485 (2d Cir.1973), or unexplained negative effects of violations of constitutional rights, *Smith v. Losee,* 485 F.2d 334, 344–45 (10th Cir.1973).

*Id.* at 25.

The Court further stated it never intended that damages for mental distress had to be awarded. And so it is here, the only evidence presented at trial was the plaintiff's subjective statements, and though uncontradicted, the testimony was uncorroborated. The jury heard the plaintiff and all the other evidence; with full knowledge that they could have elected to make an award, they refused to do so. Obviously, the plaintiff's credibility, as the jurors weighed it, did not impress them.

Now the questions to be answered are: in not awarding damages, has the jury "reached a seriously erroneous result;" would it be a "manifest miscarriage of justice" to sustain the jury verdict; am I convinced that the jury verdict is "against the clear weight of the evidence or is based upon evidence which is false or will result in a clear miscarriage of justice?"

I cannot say they reached "a seriously erroneous result." On the basis of the

---

1. In Rhode Island in a negligence action, an emotional distress must manifest a physical impairment. *Reilly v. United States,* 547 A.2d 894 (R.I.1988). Whether or not for state claims of false arrest and malicious prosecution physical manifestation is required is a more difficult question. *See D'Ambra v. U.S.,* 354 F.Supp. 810 (D.R.I.1973), *aff'd,* 481 F.2d 14 (1st Cir.1973); *Reilly, supra; Curtis v. State Dept. for Children and Families,* 522 A.2d 203 (R.I.1987); *Russell v. Salve Regina College,* 890 F.2d 484 (1st Cir. 1989); *Webbier v. Thoroughbred Racing Protective Bur., Inc.,* 105 R.I. 605, 254 A.2d 285 (1969); *Arlan v. Cervini,* 478 A.2d 976 (R.I.1984). Since, as I have said, recovery is permitted under federal law, I need not concern myself with the law of Rhode Island.

record, the jury verdict was not a manifest miscarriage of justice. Once we accept, as we must, that the deprivation of the right, in and of itself, cannot be cause for monetary redress, then the result attained herein is perfectly acceptable. If the jury system is to have meaning, the stringent standards to be satisfied before a new trial can be granted must control, divorced of any circumvention by a trial judge whose predilections favor a different result.

The plaintiff's "Motion for JNOV or in the Alternative for a New Trial" is denied.

The defendants have moved for a directed verdict. I repeat what I stated in *Farley v. Transamerica Insurance Co.*, C.A. No. 88–0414 P (D.R.I. Sept. 10, 1991):

> The jury has already returned a verdict in defendant's favor. 'If the jury … returns a verdict for the party who moved for a directed verdict, the case is at an end.' 9 Wright & Miller, Federal Practice and Procedure § 2533 at 586.

Additionally, the plain language of Federal Rules of Civil Procedure 50(b) states "[i]f a verdict was returned, the court may allow the judgment to stand or may reopen the judgment and either order a new trial or direct the entry of judgment as if the requested verdict had been directed." This language suggests that since a jury verdict has been reached in this case, no action need be taken on the defendants' motion for directed verdict.

SO ORDERED.