Richard F. DAVET, Plaintiff, Appellant,

v.

Enrico MACCARONE, et al.,
Defendants, Appellees.

No. 91–2163.

United States Court of Appeals,
First Circuit.

Heard May 8, 1992.

Decided Aug. 19, 1992.

Jeffrey S. Brenner with whom Kevin M. Brill and Corrente, Brill & Kusinitz, Providence, R.I., were on brief, for plaintiff, appellant.

Marc DeSisto with whom Carroll, Kelly & Murphy, Providence, R.I., was on brief, for defendants, appellees Enrico Maccarone, Samuel Schlagheter and Salvatore Decesare.

Gerard McG. DeCelles, Providence, R.I., for defendant, appellee Robert A. DiMeo.

Before BREYER, Chief Judge, CYR, Circuit Judge, and FUSTE,* District Judge.

FUSTE, District Judge.

In March of 1988, plaintiff Richard Davet was arrested in Providence, Rhode Island, by members of the Cranston, Rhode Island, police department. This arrest formed the basis for an action filed by Davet in the United States District Court for the District of Rhode Island, alleging a 42 U.S.C. § 1983 violation against the city of Cranston[1] and members of its police department, and also state-law tort claims for false arrest and malicious prosecution against Robert DiMeo. Davet appeals various district court rulings made at the end of a two-day jury trial. 775 F.Supp. 492. Finding that the trial court committed no reversible error, we affirm.

## I.

### Background

The underlying dispute which resulted in Davet's arrest and the federal court action arose from a business relationship between Ringco Manufacturing Co., Inc. ("Ringco"), an Ohio jewelry manufacturer, and Time Plating, Inc. ("Plating"), a Rhode Island corporation involved in the plating of jewelry. Davet is the president of Ringco, while DiMeo is the president of Plating.

Davet and DiMeo, through their corporations, began a business relationship in September 1987, in which Plating agreed to process jewelry manufactured by Ringco. Ringco would send quantities of jewelry to Plating which, in turn, would treat and then return the plated jewelry to Ringco. Difficulties arose in November 1987, when Ringco received a shipment of goods from Plating. The jewelry was shipped C.O.D. and not as agreed under the terms of the purchase order, which called for payment by Ringco within thirty days of shipment. Davet paid for the goods with a Ringco corporation check in the amount of $610.93. After inspecting the jewelry and finding that they did not conform to the contract, Davet stopped payment on the check. Upon learning of the stop payment order, DiMeo contacted Davet and demanded payment.

Over the next few months, Davet exchanged correspondence with Alan Levine, attorney for both Plating and DiMeo. Levine, on at least two occasions, warned Davet that the stop payment order violated Rhode Island banking laws and that failure to pay the amount owed would result in the filing of criminal charges. Levine also wrote to the Cleveland, Ohio, police department on December 15, 1987, contending that Davet's stop payment order constituted fraud. He sought, unsuccessfully, to enlist their assistance in resolving the matter. The Ohio police department informed Levine that Rhode Island was the proper jurisdiction to prosecute the action. Davet continued to maintain that this was a business dispute and that, under the Ringco–Plating contract, it was within his right to withhold payment for non-conforming goods.

On February 23, 1988, DiMeo filed a complaint with the Cranston, Rhode Island, police department. On February 26, 1988, a notice was sent to Davet by Investigator Enrico Maccarone, explaining that a complaint had been filed by Time Plating and that full restitution of the amount owed should be made by March 4, 1988. The

---

* Of the District of Puerto Rico, sitting by designation.

1. Plaintiff withdrew his claim against the municipality prior to verdict.

notice further warned that failure to comply would result in the issuing of a warrant for his arrest. On February 29, 1988, Davet responded to Maccarone's letter, once more explaining the circumstances surrounding the stop payment order.

A few weeks later, Davet came to Providence, Rhode Island, to attend a jewelry trade show. During his stay, Davet received a call from Maccarone, again seeking payment in the amount of the check. Davet suggested that Maccarone speak to Davet's counsel in Ohio. According to Davet, the officer agreed to speak to Davet's attorney in Ohio before taking any further action.

The next contact that Davet had with law enforcement officials was on March 14, 1988, when Cranston police officers Cecil Schlageter and Salvatore DeCesare, armed with an arrest warrant, arrived at Davet's hotel room in Providence at 10:00 P.M. to arrest him. He was taken to the Cranston police station where he spent the night. The following morning, he was arraigned and posted bail. Subsequently, the Rhode Island Attorney General's office determined that the case could not be successfully prosecuted, since jurisdiction was found to be in Ohio, not in Rhode Island.

Davet then commenced this federal suit and trial was held before Judge Raymond J. Pettine, Senior U.S. District Judge, on June 12–13, 1991. The trial was bifurcated. After plaintiff concluded the presentation of evidence on the issue of liability, the defendants moved for directed verdicts. The district court judge reserved rulings on defendant's Fed.R.Civ.P. 50 motions until the close of all the evidence. When defendants rested, their motions for a directed verdict on the issue of liability were renewed. Plaintiff also moved for a directed verdict.[2] The court denied defendant's motions and granted plaintiff's motion for directed verdict, finding that the arrest was wrongful and that DiMeo was liable for false arrest as a matter of law.[3] Judge Pettine decided to submit to the jury plaintiff's other claim of liability, whether or not DiMeo was liable to Davet for malicious prosecution. After deliberation, the jury concluded that DiMeo was not liable to Davet for malicious prosecution.

With the verdict at hand, the district judge instructed the jury that the court had previously ruled that the arrest was wrongful as a matter of law and instructed the jury on the issue of damages. The jury was sent out for deliberation to determine the amount of damages suffered by Davet. The court refused to give a punitive damage instruction. After deliberation, the jury decided not to award compensatory or nominal damages.

After trial, the parties filed a series of motions. Plaintiff moved for a new trial or for a judgment notwithstanding the verdict seeking an award of damages. In the alternative, he moved the court to award damages *sua sponte*. The court denied the motion. Plaintiff also moved for attorney's fees pursuant to 42 U.S.C. § 1988. The district court declined to rule on this motion pending the outcome of the expected appeal. Defendant DiMeo also moved the court for statutory costs in the amount of $352 pursuant to Fed.R.Civ.P. 54(d) and 28 U.S.C. § 1920. The district judge referred the matter to a United States Magistrate–Judge who, in his Report and Recommendation, found that DiMeo was a prevailing party and that the language of section 1920 included the cost of purchasing copies of six deposition transcripts. No objection was made to the report pursuant to 28

**2.** Plaintiff moved for a directed verdict asking the court to rule as a matter of law that the arrest was wrongful under Rhode Island law and in violation of the United States Constitution, subjecting the police officers to 42 U.S.C. § 1983 liability. Plaintiff also asked that the court determine that DiMeo was liable for false arrest as a matter of law.

**3.** With respect to defendant officers Schlageter and DeCesare, the court reasoned that the evidence showed that both officers were aware that Cranston policemen were without authority to execute the warrant for arrest in Providence and yet they arrested Davet. As to officers Maccarone and DiMeo, the court ruled that commencing a criminal prosecution and having Davet arrested were hasty and illegal decisions that required a jury determination as to malicious prosecution.

U.S.C. § 636(b)(1). The district court accepted the magistrate-judge's Report and Recommendation; however, the court stayed the order's execution pending the conclusion of the appeal.

Plaintiff raises the following issues on appeal. First, he challenges the district court's failure to charge the jury with respect to punitive damages. Second, he claims the district court erred in denying his motions for judgment as a matter of law,[4] a new trial or, in the alternative, for a grant of an award of damages *sua sponte*. Third, Davet argues that the magistrate-judge erred in awarding Rule 54(d) statutory costs since he, and not DiMeo, was the "prevailing party" in this litigation. Finally, he seeks this court's determination that, based on the district court's decision to direct the verdict in his favor on the section 1983 claim, Davet should be declared a prevailing party, entitling him to attorney's fees under 42 U.S.C. § 1988. We will address each of these issues *seriatim*.

## II.

### *Discussion*

#### A. *Punitive Damages Instruction*

 Davet contends that the trial court committed reversible error in failing to give a punitive damages instruction with respect to the section 1983 and false arrest claims. The standard of review is well established. An error in jury instructions will warrant reversal of a judgment only if the error is determined to have been prejudicial, based on a review of the record as a whole. *Connors v. McNulty*, 697 F.2d 18, 21 (1st Cir.1983). Our focus in examining jury instructions is to determine whether they adequately explained the law or "whether they tended to confuse or mislead the jury on the controlling issues." *Brown v. Trustees of Boston University*, 891 F.2d 337, 353 (1st Cir.1989) (quoting *Service Merchandise Company v. Boyd Corpora-*

*tion*, 722 F.2d 945, 950 (1st Cir.1983)), *cert. denied*, 496 U.S. 937, 110 S.Ct. 3217, 110 L.Ed.2d 664 (1990); *Bordanaro v. McLeod*, 871 F.2d 1151, 1164 (1st Cir.), *cert. denied sub nom, Everett v. Bordanaro*, 493 U.S. 820, 110 S.Ct. 75, 107 L.Ed.2d 42 (1989).

After charging the jury as to damages, the district judge detailed the basis for his refusal to give a punitive damages instruction.

Now, let me tell you, I'll put on the record that I did not charge punitive damages because the standard for punitive damages is very strict indeed. Let me just point out to you, I have to find that he was, that Maccarone and Schlageter and DeCesare were motivated by evil motive or intent and let me just take Schlageter and DeCesare.... Where in the world would anyone under any stretch of reason say they were motivated by any evil? These are just two police officers who are given a writ by their superior, go out and serve it. And they did their duty as they were ordered to do it. Albeit they should have known better than to go over the state, over the boundary. There is no way you can find an evil motive against then (sic) and so I refuse to charge punitive damages against them.

As to Maccarone, I cannot say that that man had an evil motive, a reckless or careless indifference to the federally protected rights of others. He accepted the statements that were given to him by DiOrio—DiMeo and in doing so, he performed what he thought was doing his duty and I don't find any ill will or malice.

There might have been, had there been any evidence which would have in any way supported the theory that it was through friendship in the police department that prompted this action but that's so flat out—that didn't support it at all and as far as DiMeo, I find and firmly

**4.** As we noted in a recent case, recent amendments to Fed.R.Civ.P. 50 have abolished the difference in nomenclature between a pre-verdict "motion for a directed verdict" and a post-verdict "motion for judgment n.o.v." and both sets of motions are now known as motions for judgment as a matter of law. *Putnam Resources v. Pateman*, 958 F.2d 448, 459 n. 7 (1st Cir.1992). Here, since the legal standard remains the same, we will refer to plaintiff's postverdict motion as a motion for judgment as a matter of law.

believe he only went to the place [police] because his attorney says, hey, you want to get this accomplished? Go to the police. And so he went. That's not evil motive. That's why I deny the motion and you have your exemption (sic).

(Appendix for Appellant, Doc. No. 21, *Transcript* at 118–19). The court did charge the jury on both compensatory and nominal damages. (*Id.* at 114–17). The compensatory damages instruction included recovery for "physical pain that he may have suffered, mental pain which may have been caused by false arrest, emotional anguish, psychological distress." (*Id.* at 116–17). With respect to nominal damages, the court charged:

Now, if you should, in your deliberations, as you discuss this, conclude and find that Mr. Davet has not sustained any actual damages, then you can return a verdict nevertheless in the nominal sum of one dollar. That recognizes the violation of the false arrest.

(*Id.* at 117). Aside from the objection for the failure to give a punitive damage instruction, plaintiff made no other objection to the court's instructions.

█ We start with the settled principle that the trier of fact may assess punitive damages in a section 1983 action "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56, 103 S.Ct. 1625, 1640, 75 L.Ed.2d 632 (1983); *Gutiérrez–Rodríguez v. Cartagena*, 882 F.2d 553, 581 (1st Cir.1989) (and cases cited therein). We have further refined this standard by holding that "punitive damages are reserved for instances where the defendant's conduct is 'of the sort that calls for deterrence and punishment over and above that provided by compensatory damages.'" *Hernández–Tirado v. Artau*, 874 F.2d 866, 869 (1st Cir.1989) (quoting *Smith*, 461 U.S. at 54, 103 S.Ct. at 1639); *Gutiérrez–Rodríguez*, 882 F.2d at 581. *See also Memphis Community School District v. Stachura*, 477 U.S. 299, 306 n. 9, 106 S.Ct. 2537, 2542 n. 9, 91 L.Ed.2d 249 (1986) (the twin pur-

poses for punitive damage awards are to punish defendants for willful or malicious conduct and to deter others from similar behavior); *Restatement (Second) of Torts* § 908(1) (1979). With respect to the state law false arrest claim, we recently had occasion to discuss the standard for imposing punitive damages under Rhode Island law.

In Rhode Island, the standard for imposing punitive damages is rigorous: "one seeking punitive damages must produce 'evidence of such willfulness, recklessness or wickedness, on the part of the party at fault, as amount[s] to criminality, which for the good of society and warning to the individual, ought to be punished.'" *Morin v. Aetna Casualty and Surety Co.*, 478 A.2d 964, 967 (R.I. 1984), *quoting Sherman v. McDermott*, 114 R.I. 107, 329 A.2d 195, 196 (1974); *see also Izen v. Winoker*, 589 A.2d 824, 829–30 (R.I.1991).

*Borden v. Paul Revere Life Ins. Co.*, 935 F.2d 370, 381 (1st Cir.1991). In Rhode Island, the initial determination whether an award of punitive damages is appropriate in a given case is an issue of law for the court to decide. *Morin*, 478 A.2d at 967; *Sherman*, 114 R.I. at 108, 329 A.2d 195; *Kenyon v. Cameron*, 17 R.I. 122, 125, 20 A. 233, 234 (1890). Even when the court determines that punitive damages may be awarded, the amount of the award remains within the discretion of the finder of fact. *Morin*, 478 A.2d at 967 (citations omitted).

█ The district court refused to charge on punitive damages finding that there was insufficient evidence to establish evil motive or intent on defendants' part. While we agree with plaintiff that punitive damages may be awarded based on defendant's reckless or callous indifference,—and not only upon a finding of evil motive or intent—our own review of the record convinces us that the district court did not commit reversible error in refusing to give a punitive damages instruction. The testimony of defendants Schlageter and DeCesare revealed that they were given a warrant signed by a Rhode Island judge and ordered to go to Providence to arrest plaintiff. They went to the hotel, executed the

warrant, and brought Davet to the Cranston police station. Defendant Maccarone's participation consisted in receiving the information from DiMeo and in preparing the criminal complaint, affidavit, and arrest warrant for the judge's signature. We think that while these officers' acts may have been sufficient to expose them to section 1983 liability—an issue not before us on appeal—they do not form the basis for awarding additional compensation over and above compensatory damages in order to punish or deter these officers from future violations. With respect to DiMeo, the evidence at trial comes nowhere near the level of "willfulness, recklessness, or wickedness amounting to criminality" necessary to trigger entitlement to punitive damages under Rhode Island law.

■ Also, we think that the jury instructions the trial judge did give and the verdicts the jury subsequently returned demonstrate that, even if the court erred in failing to instruct on punitive damages, plaintiff did not suffer sufficient prejudice to require reversal of the judgment. The court directed verdicts finding defendant police officers liable under section 1983 and DiMeo liable for false arrest. The court then instructed the jury on the standards for awarding both compensatory and nominal damages. In instructing on nominal damages, the court charged that even if the jury were to find that Davet suffered no actual damages, the jury could still return a verdict in a nominal amount, thus confirming their recognition that a false arrest had occurred. Plaintiff made no objection to these instructions. The jury returned a verdict finding no damages. Presumably, by refusing to find even nominal damages, the jury decided not to confirm the district court's ruling that a false arrest had occurred. Given these facts, even if we considered the court's refusal to give a punitive damages instruction to be error, the error would be harmless, since it did "not affect the substantial rights of the parties." Fed.R.Civ.P. 61; *see Kotler v. American Tobacco Co.*, 926 F.2d 1217, 1229 (1st Cir.1990) ("[I]f the instructions that the jury should have received on breach of warranty were materially equiva-lent to, or subsumed by, the instructions actually received on negligence, then the failure to submit the warranty count to the jury was rendered harless by the verdict on the negligence count."); *Allen v. Chance Mfg. Co.*, 873 F.2d 465, 469 (1st Cir.1989) (erroneous jury instruction will "necessitate[ ] a new trial only if the error could have affected the result of the jury deliberations").

B. *Motion for Judgment as a Matter of Law and/or New Trial*

■ After trial, and again on appeal, plaintiff argues that he is entitled, in the alternative, to have the court either set aside the jury's damages verdict, to order a new trial, or to *sua sponte* award damages. He bases his entitlement on the evidence adduced at trial of the mental suffering and humiliation he experienced as a result of his arrest and overnight incarceration.

■ Here, plaintiff challenges the weight and the sufficiency of the evidence adduced at trial with respect to damages. As such, our review of the district court's denial of the post-trial motions is "severely circumscribed." *Conway v. Electro Switch Corp.*, 825 F.2d 593, 598 (1st Cir. 1987). In order to grant a judgment as a matter of law, the evidence must be such that a reasonable person could be led to only one conclusion, that the moving party is entitled to judgment. *Luson International Distributors, Inc. v. Fabricating and Production Machinery, Inc.*, 966 F.2d 9 (1st Cir.1992); *Putnam Resources v. Pateman*, 958 F.2d 448, 459 (1st Cir.1992); *Hendricks & Assoc., Inc. v. Daewoo Corp.*, 923 F.2d 209, 214 (1st Cir.1991) (and cases cited therein); Fed.R.Civ.P. 50(b). Like the trial court, we may not assess the credibility of witnesses, evaluate the weight of the evidence or resolve conflicts in testimony, but rather must view all facts and reasonable inferences therefrom in the light most favorable to the non-movant. *Luson*, 966 F.2d 9, 11; *Putnam*, 958 F.2d at 459; *Hendricks & Assoc.*, 923 F.2d at 214. Likewise, denial of a district court's motion for a new trial will be reversed only for abuse of discretion, a discretion that is limited

from the outset. *Luson,* 966 F.2d 9, 12; *Putnam,* 958 F.2d at 459; *Conway,* 825 F.2d at 599. Neither the trial court's disagreement with the jury's verdict nor the fact that the district judge would have found otherwise in a bench trial, is a sufficient basis to displace a jury's verdict. *Luson,* 966 F.2d 9, 11; *Milone v. Moceri Family, Inc.,* 847 F.2d 35, 37 (1st Cir.1988). "[R]ather, the trial judge may set aside a jury's verdict only if he or she believes that the outcome is against the clear weight of the evidence such that upholding the verdict will result in a miscarriage of justice." *Putnam,* 958 F.2d at 459 (quoting *Conway,* 825 F.2d at 599). Reviewing the district court's post-verdict rulings· under these standards, we find no basis for reversal.

■ In a number of recent decisions, the Supreme Court has discussed the element of damages in section 1983 actions. In *Carey v. Piphus,* 435 U.S. 247, 264, 98 S.Ct. 1042, 1052–53, 55 L.Ed.2d 252 (1978), the Supreme Court held that a plaintiff could recover compensatory damages in a section 1983 action only if he proved actual injury caused by the denial of his constitutional rights. *See also Memphis Community School Dist.,* 477 U.S. at 307, 106 S.Ct. at 2543. The Court in *Carey* went on to find that if plaintiffs established a procedural due process violation, they would be entitled to recover at least nominal damages since "the right to procedural due process is 'absolute' in the sense that it does not depend upon the merits of a claimant's substantive assertions, and because of the importance to organized society that procedural due process be observed." 435 U.S. at 266–67., 98 S.Ct. at 1054 (citations omitted). In *Memphis Community School District,* in holding that damages based on abstract "value" or "importance" of constitutional rights are not permissible elements of compensatory damages, the Court clarified the role nominal damages serve in the context of section 1983 actions.

[N]ominal damages, and not damages .based on some undefinable "value" of infringed rights, are the appropriate means of "vindicating" rights whose deprivation has not caused actual, provable injury:

"Common-law courts traditionally have vindicated deprivations of certain 'absolute' rights that are not shown to have caused injury through the award of a nominal sum of money. By making the deprivation of such rights actionable for nominal damages without proof of actual injury, the law recognizes the importance to organized society that those rights be scrupulously observed; but at the same time, it remains true to the principle that substantial damages should be awarded only to compensate actual injury or, in the case of exemplary or punitive damages, to deter or punish malicious deprivations of rights."

477 U.S. at 308 n. 11, 106 S.Ct. at 2543 n. 11 (quoting *Carey,* 435 U.S. at 266, 98 S.Ct. at 1053–54). Included in "compensatory" damages are out-of-pocket losses and other economic harms, as well as injuries to reputation, personal humiliation, and mental anguish and suffering. *Id.* at 307, 106 S.Ct. at 2543 (quoting *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 350, 94 S.Ct. 2997, 3012, 41 L.Ed.2d 789 (1974)). These principles guide our review of the district court's denial of post-verdict relief.

Plaintiff's evidence of damages consisted solely in his own testimony relating to the mental suffering and humiliation he experienced while under police custody. He presented no evidence of economic loss. In failing to award damages, the jury must not have credited this testimony and, following the judge's instructions, decided that plaintiff either did not meet his burden of proving the element of damages by a preponderance of the evidence or that he, in fact, suffered no damages.[5] In any

---

**5.** The judge instructed the jury as follows:

Now, damages has limitations, and by that I mean that you can only award damages to the extent that you find that damages have been proven, so that's the first thing you have to decide. Then in doing that, you can't spec-

ulate—you can't guess; you have ·to try to decide not only the fact that it happened but you have to decide it has been proven with certainly (sic) in accordance with the rules that I've given you and as to the amount. If you are going to award any amount, they too

case, it was not in the trial court's province—nor is it in ours—to set aside the jury's decision, based as it was on a credibility determination. Nor can we say that the verdict is against the clear weight of the evidence or represents a miscarriage of justice such that a new trial is warranted.

■ Likewise, the jury's failure to award at least nominal damages does not warrant reversal of this verdict. From the district court's perspective, the police officers violated plaintiff's constitutional right. Presumably, had it been a bench trial, the court would have awarded at least nominal damages to acknowledge the violation of plaintiff's civil rights. The jury, however, after hearing the evidence presented and receiving instructions on compensatory and nominal damages, decided that plaintiff was not entitled even to a nominal award. Since the court had instructed that a nominal award would confirm the fact of defendant's liability, the jury's decision demonstrated that they did not concur with the court's liability determination.[6] In any event, in the context of the motion to set aside a verdict, our own review of the record convinces us that the evidence does not "point so strongly and overwhelmingly in favor of the movant [plaintiff] that a reasonable jury could not have arrived at this conclusion." *Chedd–Angier Production Co. v. Omni Publications International, Ltd.*, 756 F.2d 930, 934 (1st Cir. 1985). We will, therefore, not disturb the jury's determination that plaintiff failed to establish the element of damages. Nor can

we say that the district court abused its discretion in allowing the jury verdicts to stand. As such, plaintiff is not entitled to post-verdict relief.

■ Finally, plaintiff moved the district court, and again argues before us on appeal, that the district court could *sua sponte* award damages. Our research has uncovered no case, nor has plaintiff cited any precedent, which stands for the proposition that a district court can, on its own motion, simply disregard the jury's finding. The jury rendered its verdict after hearing the evidence and being instructed as to the applicable law. Unlike the pre- and post-verdict sufficiency of the evidence challenges outlined above, we can find no basis for plaintiff's claim that the district court can simply award damages because it disagrees with the jury's verdict. We, therefore, deny plaintiff's invitation to order the trial court to award damages *sua sponte*.

### C. *Statutory Costs*

■ Plaintiff also objects to the award of Fed.R.Civ.P. 54(d) statutory costs to defendant DiMeo. Unfortunately, his objection comes too late. After the magistrate-judge issued his report, plaintiff had ten days to file written objections to the Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed.Proc.Rules Service, District Court for the District of Rhode Island, Rule 32(c)(2). We find no evidence in the record that plaintiff objected to the magistrate-judge's findings and recommended

---

have to be proven and you can't speculate as to what those damages are.

You have to base the amount, if you so award an amount, upon consideration of the evidence before you and then with that before you, try to determine in as precise a fashion as you can what you think is a fair and adequate compensation for what Mr. Davet alleges he suffered. *So first, we ask, did he suffer damages?* Were they proximately caused by the false arrest? If you answer both yes, say, well, what damages did he suffer? And you decide that and then you say what is that worth? And you try to determine that to as precise an amount as you can. (Appendix for Plaintiff, Ex. 21, Tr. at 116) (emphasis added).

**6.** Benefiting from the gift of hindsight, one may think that the simple facts of this case merited

no bifurcation of issues. Perhaps a single jury charge on liability and damages with one session of jury deliberation would have been the best alternative to follow. We surmise that the *timing of the directed verdict for plaintiff* (wrongful and false arrest) and its announcement to the jury after they failed to find for plaintiff on a similar theory of recovery (malicious prosecution), predisposed the jury against awarding even nominal damages for wrongful and false arrest. *See* 9 Charles Wright & Arthur Miller, *Federal Practice and Procedure: Civil* § 2533, at 586 (1971). However, no objection to this procedure was noted or preserved. We do not think that the district court's trial management decision worked an otherwise actionable injustice.

disposition. Failure to raise objections to the Report and Recommendation waives the party's right to review in the district court and those claims not preserved by such objection are precluded on appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Keating v. Secretary of Health and Human Services*, 848 F.2d 271, 275 (1st Cir.1988); *Templeman v. Chris Craft Corp.*, 770 F.2d 245, 247 (1st Cir.) ("Absent objection by the plaintiffs, the district court had a right to assume that plaintiffs agreed to the magistrate's recommendation."), *cert. denied*, 474 U.S. 1021, 106 S.Ct. 571, 88 L.Ed.2d 556 (1985). The district court's decision to award statutory costs must, therefore, stand.

### D. *Section 1988 Attorney's Fees*

The district court declined to rule on plaintiff's or defendants' petition for attorney's fees, awaiting the outcome of this appeal. Nevertheless, plaintiff seeks a ruling from this court that he was a "prevailing party" and is, therefore, entitled to attorney's fees under 42 U.S.C. § 1988. Since the district court has yet to decide the issue of section 1988 fees, there is no final, appealable order pursuant to 28 U.S.C. § 1291. *See Phelps v. Washburn University of Topeka*, 807 F.2d 153, 154–55 (10th Cir.1986) (per curiam); *Bandai America Incorporated v. Bally Midway Mfg. Co.*, 775 F.2d 70, 75 (3d Cir.1985), *cert. denied*, 475 U.S. 1047, 106 S.Ct. 1265, 89 L.Ed.2d 574 (1986). At this time, therefore, we lack jurisdiction to determine the merits of plaintiff's attorney's fees motion.

*Affirmed.*