The HOME INSURANCE COMPANY, Plaintiffs,

v.

PAN AMERICAN GRAIN & MANUFACTURING COMPANY, INC., Defendant.

No. CIV. 00–1184(JAG).

United States District Court, D. Puerto Rico.

Sept. 30, 2003.

William A. Graffam, Jimenez, Graffam & Lausell, San Juan, PR, for plaintiff.

Antonio Moreda–Toledo, Moreda & Moreda, San Juan, PR, Derek A. Walker, Ivan M. Rodriguez, Chaffe, McCall, Phil-

lips, Toler & Sarpy, LLP, New Orleans, LA, Mario Pabon–Rosario, Hato Rey, PR, for defendants.

## OPINION AND ORDER

GARCIA–GREGORY, District Judge.

Pending before the Court are plaintiff The Home Insurance Company's (hereinafter "The Home") objections as well as the response to these objections by defendant Pan American Grain & Manufacturing Company, Inc.'s (hereinafter Pan American), to a United States Magistrate–Judge Justo Arenas' Report and Recommendation (Docket No. 72) on the parties motion and cross-motion for summary judgment referred by the Court. The Home filed a motion for summary judgment for on its claim for (1) breach of a settlement agreement it executed with Pan American and (2)for dismissal of Pan American's claim for fraud in the inducement of the settlement agreement. Pan American in turn filed a cross motion for summary judgment seeking dismissal of the (1) The Home's claim of breach of the settlement agreement and (2) in support of its claim for fraud in the inducement of the settlement agreement. Magistrate–Judge Arenas in his Report and Recommendation recommended that the Court grant Pan American's motion for summary judgment dismissing The Home's claim for breach of the settlement agreement, and grant The Home's motion for summary judgment seeking dismissal of Pan American's counterclaim. The Home's objects to the Magistrate–Judge's Report and Recommendation because: (1) he erroneously interpreted the agreement and the legal basis used to support his conclusion, (2) he erroneously concluded that a settlement is the equivalent of an award, and (3) he erroneously concluded that the so-called Ochoa settlement was one for the loss of use. Pan American responded to

The Home's objections, but it did not object to that portion of the Magistrate–Judge's Report and Recommendation recommending the dismissal of its counterclaim against The Home. Inasmuch as Pan American waived any objections it may have had to the Report and Recommendation, we will only discuss The Home's objections and summarily adopt here those portions of the report recommending dismissal of Pan American's counterclaim. *See,* e.g. *Davet v. Maccarone,* 973 F.2d 22, 30–31 (1st Cir.1992);. *Latin American Mechanical Rights Collection Agency, Inc. v. Marti, Flores, Prieto & Wachtel Advertising, Inc.,* 204 F.Supp.2d 270 (D.P.R.2002). For the reasons stated below, the Court ADOPTS the Report and Recommendation.

### Factual Background

The present cause of action arises out of a settlement agreement alleged to have been breached by one of the parties involved. The Home had issued a policy of hull insurance to Pan American for the vessel "ITB ZORRA." The ZORRA caught fire, causing severe damage to the vessel. The hull insurers investigated the event. They ultimately concluded that the fire and the damage were caused by the lack of seaworthiness of the vessel and that Pan American was not entitled to the insurance proceeds they were claiming from The Home for the alleged total loss of the ZORRA.

The insurance controversy between the parties was ultimately resolved through a settlement agreement executed between The Home and Pan American. The present case involves a hotly disputed interpretation of certain clauses of this settlement agreement. Pursuant to the agreement, The Home paid Pan American $3,333,000 at the time of its execution. When the agreement was executed, Pan American had an ongoing arbitration proceeding un-

der way in New York, and a number of other court actions pending, which sought recovery of damages. Pan American agreed, as part of the settlement agreement, that The Home would be allowed participation in any future amounts that Pan American could recover from the ZORRA incident, up to the original $3,333,000 that had been paid by The Home.

Approximately one (1) year elapsed after Pan American and The Home had executed the settlement agreement, when The Home learned that Pan American had settled a claim with Ochoa Fertilizer, Inc. (from here on the "Ochoa settlement") for $800,000. Ochoa and Pan American had reached a settlement whereby Pan American agreed to release and discharge Ochoa from all claims by Pan American. The release included all actions, judgments, costs and demands in connection with the incident that had occurred on April 24, 1995 and which caused the *loss of use* of property and damage to property of Pan American and the ITB Zorra. Indeed, Pan American and Ochoa labeled their settlement as one for *"loss of use."* The Home now claims that Pan American breached the settlement agreement it had executed with The Home because Pan American had to request The Home's consent or approval before entering into *any* kind of *settlement* with *any* third party on account of the damages arising out of the ITB Zorra casualty, and Pan American failed to do so. Moreover, the Home claims that it is entitled to receive one third of the gross aggregate recovery made by Pan American when it settled its claims against Ochoa.

### Standard of Review

A district court may, on its own motion, refer a pending matter to a United States Magistrate–Judge for a report and recommendation. See 28 U.S.C. § 636(b)(1)(B); Fed.R. Civ.P. 72(b); Rule 503, Local Rules, District of Puerto Rico. Pursuant to Federal Rule of Civil Procedure 72(b) and Local Rule 510.2, the adversely affected party may contest the report and recommendation by filing written objections "within ten days of being served" with a copy of the order. 28 U.S.C. § 636(b)(1). The Court must then make a *de novo* determination of those portions of the report or specified proposed findings or recommendation to which objection is made. *See United States v. Raddatz*, 447 U.S. 667, 673, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980); *Lopez v. Chater*, 8 F.Supp.2d 152, 154 (D.P.R. 1998). The Court may accept, reject, or modify, in whole or in part the Magistrate–Judge's recommendations. "Failure to raise objections to the report and recommendations waives that party's right to review in the district court and those claims not preserved by such objections are precluded on appeal." *Davet v. Maccarone*, 973 F.2d 22, 30–31 (1st Cir.1992) (citations omitted). See, *ante*, at 2–3. (Pan American's failure to raise objections to the Report and Recommendation that its counterclaim be dismissed results in summary adoption of that portion of the Report.)

### Discussion

This court will now address the issues raised by The Home's objections to the Report and Pan American's Response thereto.

### I. Legal Basis for the Interpretation of the Contract

The Home objects to the literal reading of the settlement agreement made by the Magistrate–Judge and to the legal basis he used to support his conclusion. "A court may state the meaning of a contract on summary judgment if the agree-

ment is clear on its face." *Adria Int'l Group, Inc. v. Ferre Dev., Inc.*, 241 F.3d 103, 111 (1st Cir.2001); *Torres Vargas v. Santiago Cummings*, 149 F.3d 29, 33 (1st Cir.1998).

 Puerto Rico Civil Code Article 1233 is applicable to the dispute arising in this case. The settlement agreement between The Home and Pan American expressly incorporates Puerto Rican law. This, of course, includes the Puerto Rico Civil Code Rules on interpretation of contracts. *See,* Docket No. 38, Exhibit D, Clause 10. Article 1233 states: "If the terms of a contract are clear and leave no doubt as to the intentions of the contracting parties, the literal sense of its stipulations shall be observed. If the words should appear contrary to the evident intention of the contracting parties, the intention shall prevail." 31 P.R. Laws Ann. § 3471 (1991). This Article mandates that courts enforce the literal sense of a written contract, unless the words are somehow contrary to the intent of the parties. *Fernandez–Fernandez v. Municipality of Bayamon,* 942 F.Supp. 89, 94 (D.P.R. 1996); *Hopgood v. Merrill Lynch, Pierce, Fenner & Smith,* 839 F.Supp. 98, 104 (D.P.R.1993). When the agreement is clear and unambiguous, the court should ignore parole evidence and enforce the terms of the contract. *Borschow Hosp. & Med. Supplies, Inc. v. Cesar Castillo, Inc.,* 96 F.3d 10, 15–16 (1st Cir.1996). For article 1233 purposes, a term is considered "clear" when it is sufficiently lucid to be understood to have one particular meaning, without room for debate. *Fernandez–Fernandez v. Municipality of Bayamon,* 942 F.Supp. 89, 94 (D.P.R.1996); *Hopgood v. Merrill Lynch, Pierce, Fenner & Smith, supra, id.* Therefore once a court determines that the terms of a contract are sufficiently clear so that only one meaning is possible, the court cannot dwell on the "alleged" intent of the parties at the time they entered into the contract. *Velez Cajigas v. Order of St. Benedict,* 115 F.Supp.2d 246, 251 (D.P.R.2000); see also *Nike Int'l, Ltd. v. Athletic Sales, Inc.,* 760 F.Supp. 22, 24 (D.P.R.1991) ("Where contract terms and clauses are clear and unambiguous courts should abstain from speculating about possible intentions of parties and should interpret them according to their will expressed at the time of its execution.").

The law governing the interpretation of contracts is clear and well-established. Upon a careful review of the record and the settlement agreement in question, as well as of applicable law, this Court finds that the legal basis for the Magistrate–Judge's decision is correct.

## II. The Settlement Agreement

The Magistrate–Judge in his Report and Recommendation found that the settlement agreement is unambiguous and open only to one plausible interpretation. This Court will in turn analyze the disputed clauses of the settlement agreement in light of the contract interpretation rules found in the Civil Code. The pertinent clauses read as follows:

(6) Pan American and/or the ZORRA and/or Zorra Transport Inc. "Zorra Transport" will pay The Home the lesser of $1,333,000 or one-third of the gross aggregate recovery made, whether obtained by way of suit, arbitration, claim, verdict, award, settlement, or otherwise, from or against any and all person(s) for damage to Pan American and/or the ZORRA and/or Zorra Transport arising out of or relating to the Fire, excluding only that portion, if any, of any verdict or award in favor of Pan American that specifically and separately award(s) Pan American a recovery for punitive damages and/or loss of use. If Pan Ameri-

can and/or the Zorra and/or Zorra Transport make a gross aggregate recovery, whether obtained by way of suit, arbitration, claim, verdict, award, settlement, or otherwise, in excess of $10,000,000, (excluding any recovery for punitive damages and/or loss of use as described above) then Pan American and/or the Zorra and/or Zorra Transport will pay The Home one-third of any gross amount in excess of $10,000,000, up to $2,000,000, in addition to the above $1,333,000.

(7) The Home's written approval of any settlement by Pan American and/or the ZORRA and/or Zorra Transport of any claim against any person for damage arising out of or relating to the Fire, out of which The Home is to receive all or part of the above amount of $1,333,000 is a condition precedent to any agreement to any such settlement. The Home agrees that it will not unreasonably withhold said written approval. The Home's approval is not a condition precedent to any settlement out of which The Home is not to receive any part of the above amount of $1,333,000.

(8) Prior to requesting any required approval from The Home of any settlement, and prior to agreeing to any settlement or satisfaction of any judgment or award out of which The Home is to make a recovery under this agreement, Pan American will advise the prospective settling or paying party that The Home has an economic interest in the settlement or satisfaction if Pan American and The Home jointly agree that such information will maximize the recovery or will obtain some other mutually advantageous result. The payment of any such settlement or satisfaction shall be made by check(s) or bank draft(s) made payable to both Pan American and The Home. In the event the information is not disclosed, Pan American agrees

and undertakes that payment of any settlement or satisfaction shall be made by check(s), bank draft(s), or wire transfer(s) to Chaffe, McCall, Phillips, Toler & Sarpy, L.L.P., as attorneys for Pan American Grain Manufacturing Co., Inc., and that such funds will be held in trust or escrow by Chaffe McCall, to be disbursed pursuant to the terms and conditions of this agreement only after disbursement has been agreed to, approved, and authorized in writing to Chaffe McCall by Pan American and The Home.

(Dockets No. 38 and 41, Exhibits D and 1, Settlement Agreement, at 4–5.)

▬ The Home argues that Pan American breached the settlement agreement. between the two parties when Pan American settled its legal claims against Ochoa and failed to pay plaintiff a portion of the recovery. Under the settlement agreement, Pan American was to pay The Home a portion of any recovery made by the "way of suit, arbitration, claim, verdict, award, settlement, or otherwise, from or against any and all person(s) for damage to Pan American and/or the Zorra Transport arising out of or relating to the Fire." According to paragraph (6), The Home could be excluded from "only that portion, if any, of any verdict or award in favor of Pan American that specifically and separately award(s) Pan American a recovery for punitive damages and/or loss of use." The Home avers that Pan American's settlement with Ochoa is not covered by the exclusion provisions in the settlement agreement, which solely pertains to recovery from a *verdict or award*. The Home reads verdict or award as *excluding* a settlement agreement. Thus, because Pan American failed to pay The Home a portion of the recovery from its settlement with Ochoa, the Home claims that Pan American breached the settlement agree-

ment. In order to reach a conclusion, this Court has to determine whether the settlement agreement is comprised within the terms put forth by the exclusionary clause.

It is uncontested that the settlement agreement reached between Ochoa and Pan American was the outcome of a civil litigation between them. According to *Black's Law Dictionary*, 132 (7th Ed.1999), a settlement is defined as: "a final judgment or decision, esp. one rendered by an arbitrator or a jury assessing damages". The meaning of award, therefore, is not *limited to* a judgment rendered by an arbitrator, though that may be a common usage. An award is also a final decision, such as that agreed upon through a settlement agreement. Moreover, while the word award may be used as a verb meaning "to grant", it may also be used to signify the grant itself, especially of damages in a civil action. Finally, the use of the terms "verdict" *or* "award" signal a distinction between the two terms that would be rendered meaningless by The Home's particular reading of the terms.

In addition, the exclusionary clause must conform to the rules of contract interpretation envisioned by Puerto Rico law, as well as any applicable substantive legal provisions found in Puerto Rico's Civil Code. In this sense, Article 1709 of the Civil Code of Puerto Rico establishes that: "A compromise is a contract by which each of the parties in interest, by giving, promising, or retaining something, avoids the provocation of a suit, or terminates one that has already been instituted." This section operates in conjunction with Article 1715 of the Civil Code of Puerto Rico, that further provides that: "A compromise has, with regard to the parties, the same authority as *res adjudicata* ...". (Emphasis ours.) The word "compromise" is synonymous to "agreement" See *Webster's Third New International Dictionary* at 467 (Merriam Webster 1993) (compromise means a "formal agreement").

It is clear from articles 1709 and 1715 that a settlement agreement reached in a pending court case operates and has the same binding effect as a final judgment. In addition, case law has established that a "stipulation" in court that settles a claim is essentially a "compromise". See, *Sucesion Roman v. Shelga Corp.*, 111 D.P.R. 782 (1981).

The Home's narrow, unilateral understanding of the exclusionary clause is a futile attempt to find ambiguity where none exists. The settlement agreement between Ochoa and Pan American specifically and separately awarded Pan American a recovery for loss of use. Therefore, the court finds that the agreement between Pan American and Ochoa is covered by the exclusionary clause contained in Paragraph six (6) of the Home's settlement agreement with Pan American. The Home is therefore not entitled to recover any amounts from Pan American on the basis of Pan American's agreement with Ochoa. Inasmuch as the settlement agreement between Pan American and The Home was not breached by Pan American when it "compromised" its claim against Ochoa, Pan American is not entitled to claim for fraud in the inducement of the settlement agreement it executed with The Home.

### III. Loss of Use

Finally, The Home argues that the settlement agreement between Pan American and Ochoa cannot be considered one for loss of use. To support its argument, The Home avers that Pan American made no claims for loss of use to Ochoa and submits a copy of the complaint filed by Pan American against Ochoa, as well as a copy of the settlement agreement between the parties in that litigation. A careful reading of

both documents does not provide this Court with sufficient evidence to determine that said agreement was not for loss of use. On the contrary the settlement agreement specifically states that it is in settlement of "claims or future claims for loss of use of property" (Docket No. 38, Exhibit E).

In addition, The Home argues that in cases of total loss, there is a bar to recovery for any loss of use. However, The Home fails to submit any evidence that there was a determination of total loss in this matter. The Home cites Exhibits M and O of its Motion for Summary Judgment to support its contention; however, while the documents reference damages and losses sustained, neither one of those documents establish or even hint at total loss of the vessel. Therefore, this Court finds that The Home has provided no basis to support its claim that there may not be a recovery for loss of use.

The Home simply disagrees with the Magistrate–Judge's findings. Its objections merely recast the arguments made before and rejected by the Magistrate–Judge. This Court finds that The Home's forced, unilateral understanding of the settlement agreement provisions is not consistent with applicable Puerto Rican law. Furthermore, its argument on the issue of loss of use is unfounded and unpersuasive.

### Conclusion

For the foregoing reasons, the Court **ADOPTS** *in toto* Magistrate–Judge Justo Arenas' Report and Recommendation. Hence, Pan American's motion for summary judgment seeking dismissal of The Home's claim of breach of the settlement is hereby **GRANTED**. Additionally, The Home's motion for summary judgment seeking dismissal of Pan American's counterclaim based on fraudulent inducement is

also **GRANTED**. Judgment shall be entered accordingly.

IT IS SO ORDERED.