21 F.3d 29
 146 L.R.R.M. (BNA) 2065, 62 USLW 2703,
127 Lab.Cas. P 57,650,
9 Indiv.Empl.Rts.Cas. (BNA) 676
 Russell BOLDEN,
v.
SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY,
Third-Party Plaintiff,
v.
TRANSPORT WORKERS UNION OF PHILADELPHIA, LOCAL 234,
TRANSPORT WORKERS UNION OF AMERICA/AFL-CIO,
Third-Party Defendant,
Southeastern Pennsylvania Transportation Authority, Appellant.
 No. 93-1216.
 United States Court of Appeals,
Third Circuit.
 Argued Sept. 9, 1993.
Decided April 7, 1994.
Sur Petition for Rehearing May 9, 1994.
 
 Richard S. Meyer (argued), Blank, Rome, Comisky & McCauley, Philadelphia, PA, for appellant.
 H. Francis deLone, Jr. (argued), Philadelphia, PA, for appellee.
 Before: STAPLETON, ROTH and LEWIS, Circuit Judges.
 LEWIS, Circuit Judge.
 
 
 1
 We revisit a case which had come before us in banc and which we had remanded for a new trial on damages. Now, after the trial on remand, we confront a contention that the jury verdict was inconsistent with the law of the case as established by our in banc opinion in the first appeal. We conclude that the jury's verdict can be reconciled with our prior ruling, and that the evidence presented at trial was sufficient to support the jury's award. We must also decide whether expert medical testimony is required to prove emotional distress damages in a case brought pursuant to 42 U.S.C. Sec. 1983 in this circuit. Our conclusion that such testimony is not required leads inexorably to affirmance of the district court.
 
 I.
 
 2
 Plaintiff/appellee Russell Bolden was a maintenance custodian for the Southeastern Pennsylvania Transportation Authority ("SEPTA") from 1981 to 1986. This case, in which Bolden asserts a section 1983 claim against SEPTA, arises from his discharge for suspected drug use. The facts surrounding his employment with SEPTA and his claims are set forth in detail in our in banc opinion, see Bolden v. SEPTA, 953 F.2d 807 (3d Cir.1991) (in banc ) (Bolden I ), and we need not recite them here.
 
 
 3
 In Bolden I, we affirmed the district court's entry of judgment after a jury verdict for Bolden, holding that SEPTA had violated Bolden's rights by requiring him to undergo an unconstitutional drug test. We reversed the damage award, however, and limited the damages Bolden could recover on remand in light of an agreement settling a grievance he had asserted against SEPTA. See Bolden I, 953 F.2d at 829. Pursuant to that settlement, Bolden was to return to work in exchange for partial back pay on condition that he submit to future drug testing. Although that settlement did not have a res judicata or collateral estoppel effect on Bolden's section 1983 claim against SEPTA, id. at 825-26, we determined that Bolden was bound to it because the union had consented to it on his behalf. Because the settlement "had the same effect ... as if Bolden himself had consented to future drug testing," id. at 829, his subsequent refusal to return to work under the condition that he undergo further drug testing "cut off his right to damages for lost wages following that date." Id. (Emphasis added.) Because it was impossible to determine "how much of the jury verdict was based on lost wages and emotional distress occurring after this settlement," we reversed the award of damages and remanded for a new trial on that issue. Id. (Emphasis added.) In concluding our opinion, we reiterated "that SEPTA is not liable for wages lost by Bolden after the settlement between SEPTA and his union." Id. at 831 (emphasis added).
 
 
 4
 On remand, SEPTA argued that our in banc opinion mandated that Bolden be treated as if he had returned to work pursuant to the settlement agreement. SEPTA reasoned that if Bolden had returned to work, he would be able to show neither wage loss nor damages for emotional distress and harm to reputation suffered after the settlement date. Therefore, it first argued that the settlement entirely foreclosed recovery of those types of damages attributable to the period after the effective date of the settlement. SEPTA argued in the alternative that even if recovery of damages for emotional distress and harm to reputation incurred after the effective date of the settlement were not entirely precluded, our in banc decision mandated that Bolden be precluded from receiving damages for emotional distress and injury to reputation which stemmed from his being unemployed and from his discharge having rendered him "unemployable" after he rejected the opportunity to return to work provided by the settlement.
 
 
 5
 The district court refused SEPTA's proposed jury instructions to this effect; instead, it first submitted a general interrogatory to the jury, asking: "What amount of money damages, if any, is Russell Bolden entitled to receive from SEPTA for emotional distress and harm to his reputation alleged to have been sustained by him as the result of SEPTA's violation of his constitutional rights?" The jury answered "$250,001." App. at 207. The court then submitted a more specific set of interrogatories, asking the jury to delineate which portion of the $250,001 represented "damages sustained by [Bolden] before June 1, 1988" (the effective date of the settlement agreement) and which portion represented "damages sustained by him on or after June 1, 1988." The jury allocated $1.00 of the damages to the pre-June 1, 1988 period and $250,000 to the period on or after that date. App. at 208.
 
 
 6
 The district court denied SEPTA's post-trial motions for judgment as a matter of law, a remittitur or a new trial. Bolden v. SEPTA, 820 F.Supp. 949 (E.D.Pa.1993) (Bolden II ). SEPTA appeals, arguing that the district court erred in not accepting its reading of our in banc opinion. The district court had jurisdiction over this case pursuant to 28 U.S.C. Secs. 1331 and 1343, and we exercise jurisdiction pursuant to 28 U.S.C. Sec. 1291.
 
 II.
 
 7
 We agree with the district court that the jury's allocation of the verdict "produced a peculiar and seemingly inconsistent result." Bolden II, 820 F.Supp. at 956. Whether this peculiar result should stand, however, depends upon whether, as a matter of law, Bolden can recover damages for post-settlement emotional distress and injury to reputation related to unemployment and unemployability in the wake of our in banc ruling that he was bound by the settlement. We apply a plenary standard of review to this determination. Feather v. United Mine Workers of America, 903 F.2d 961, 964 (3d Cir.1990).
 
 
 8
 Clearly, our in banc opinion was not intended to prohibit Bolden from recovering damages for all post-settlement emotional distress and injury to reputation. Our ruling that his settlement did not have a res judicata or collateral estoppel effect on his section 1983 case necessarily implied that his union had not resolved his section 1983 case by agreeing to that settlement. Instead, the union, acting pursuant to the Pennsylvania Public Employees Relations Act ("PERA"), Pa.Stat. tit. 43 Sec. 1101.606, settled only Bolden's discharge grievance with SEPTA, leaving his claims for damages stemming from the unconstitutional search and seizure, including those for emotional distress, unscathed whether they occurred before or after the settlement.
 
 
 9
 Our conclusion that Bolden was bound by the terms of the settlement and that his non-compliance with it terminated his right to lost wages after the effective date of the agreement did, however, preclude Bolden from recovering damages caused by his failure to return to work. The law of the case doctrine applies both to issues expressly decided by a court in prior rulings and to issues decided by necessary implication. Doe v. New York City Department of Social Services, 709 F.2d 782 (2d Cir.1983). When we concluded that Bolden was bound by the settlement and thus, in effect, had consented to the testing as a condition of his return to work, our in banc opinion also necessarily implied that SEPTA could not be held responsible for damages stemming from Bolden's refusal to take the test and return to work.
 
 
 10
 The issue before us, then, is whether the jury's apportionment of the verdict is inconsistent with our prior decision to the extent it may be construed as an award of damages based upon Bolden's failure to return to work, rather than the constitutional violation. SEPTA argues that because the jury apportioned liability as $1.00 for the period before the effective date of the agreement and $250,000 thereafter, it must have awarded damages for Bolden's being unemployed and "unemployable" after that date. SEPTA recognizes that "a verdict must be molded consistently with a jury's answers to special interrogatories when there is any view of the case which reconciles the various answers," Bradford-White Corp. v. Ernst & Whinney, 872 F.2d 1153, 1159 (3d Cir.1989) (emphasis added),[1] but argues that "there is no view of the case that can rationally synthesize the primary verdict and the subsequent allocation, let alone make the results consistent with the en [sic] banc opinion." SEPTA's brief at 20 (emphasis in original).
 
 
 11
 To the contrary, Bolden's contention was that SEPTA's unconstitutional drug testing program branded him as a drug abuser and that he suffered severe emotional distress as a result. His lay witnesses gave testimony about his reaction to this branding from which the jury could have concluded that it left Bolden a broken man. We believe the jury could have found as well from Bolden's own testimony that the primary impact was not visited upon him until after his discharge. Until that time, he had pinned his hopes on being vindicated in the grievance process, but the settlement of the grievance dispelled that hope. Indeed, the jury may have believed the settlement--providing as it did that Bolden could return to work only after taking another drug test--exacerbated the impact of the branding by implying that he was a drug user.
 
 
 12
 While the PERA gave the union authority to settle Bolden's grievance without his consent, that settlement does not bar Bolden from recovering for the emotional distress directly occasioned by SEPTA's unconstitutional drug testing program. The fact that the pendency of the grievance procedure postponed the impact of that testing program does not relieve SEPTA of responsibility for the delayed impact. Neither general labor law principles nor the PERA require that Bolden be deemed to have consented to the emotional distress inflicted by SEPTA when he had no control over the union's entering the settlement agreement.
 
 
 13
 SEPTA argues that the district court erred by refusing its proposed jury instructions, which would have clarified the difference between emotional distress damages which could be recovered and those which could not. Near the end of trial, however, the district court instructed the jury as follows concerning the settlement agreement:
 
 
 14
 The union could not require Mr. Bolden to return to work under the conditions set forth in the settlement, but Mr. Bolden cannot, in this case, claim any loss of wages beyond the date of the settlement or that SEPTA did not permit him to return to work pursuant to the terms of the settlement with the union.
 
 
 15
 Bolden II, 820 F.Supp. at 955.
 
 
 16
 The court also provided an instruction on causation; it cautioned the jury to determine the amount of "damages caused by the constitutional violation" as follows:
 
 
 17
 As I instructed you yesterday, Mr. Bolden is bound by the terms of the union-SEPTA settlement as to his claim for lost wages and as to the terms of his employment with SEPTA, and he cannot claim any loss of wages after the date he became aware of that settlement. However, the settlement does not affect his claim for other damages caused by the constitutional violation, and I am submitting to you his claim for emotional distress and harm to reputation for the periods both before and after the settlement and for the future.
 
 
 18
 Id. at 955-56. The court reiterated several times during the jury instructions that the constitutional violation at issue was the drug testing conducted in June 1987. SEPTA had an opportunity to, and did, argue to the jury that the damages Bolden claimed were not caused by the constitutional violation but were caused at least in part by Bolden's having rejected his union's settlement agreement. App. at 881.
 
 
 19
 Therefore, although SEPTA's proposed instructions may have clarified the issue of causation for the jury, the district court did not err in refusing those instructions. Absent an error of law, decisions as to proposed jury instructions are generally subject to review only for abuse of discretion. United States v. Salmon, 944 F.2d 1106, 1125 (3d Cir.1991). See Waldorf v. Shuta, 896 F.2d 723, 740 (3d Cir.1990) (root question after instructions have been given is whether the charge as a whole fairly and adequately submits the issues to the jury; court will reverse only if instruction was capable of confusing and thereby misleading the jury). We have determined that there was no error of law and that the district court did not abuse its discretion. We will affirm on this point.
 
 III.
 
 20
 SEPTA also claims that even assuming the damages awarded to Bolden represented remuneration for compensable injuries, $250,001 is an excessive verdict for the injury shown by the evidence. We review this issue to determine whether the district court abused its discretion in refusing to grant a remittitur. Motter, 883 F.2d at 1230.
 
 
 21
 In Spence v. Board of Education of Christina School District, 806 F.2d 1198 (3d Cir.1986), we affirmed a remittitur based upon lack of evidence to support an award of damages for emotional distress in a section 1983 case. In that case, the plaintiff testified about her distress but produced no evidence that her peers thought less of her, that she had lost income or that she had suffered physically from or had undergone counseling for emotional distress in the wake of the incident for which she claimed damages. We affirmed the trial court's remittitur of the plaintiff's emotional distress damages from $25,000 to $2,940 because "neither the circumstances nor the testimony established that there was 'a reasonable probability, rather than a mere possibility, that damages due to emotional distress were in fact incurred.' " Spence, 806 F.2d at 1201.
 
 
 22
 In this case, Bolden, like Spence, produced virtually no evidence of a lessened reputation. The testimony at trial indicated that his friends continued to think the same of him after the drug testing, and he offered no evidence of physical effects of distress or of having received counseling. Unlike Spence, however, the record in this case reveals evidence of emotional distress other than loss of reputation. For example, Bolden presented the testimony of four persons in addition to himself. Arguably, the testimony of two of those witnesses--Bolden's wife and daughter (who began crying on the witness stand)--could well have swayed the jury's determination. Moreover, a jury could have inferred emotional distress from the income he lost as a result of the test even before the settlement. Therefore, Spence is not controlling here.
 
 
 23
 While it is true that speculative damages cannot be awarded in civil rights cases, Gunby v. Pennsylvania Electric Co., 840 F.2d 1108 (3d Cir.1988), the evidence in this case supports the jury's award. The evidence is stronger, for example, than that presented in Gunby, in which we reversed an award of $15,000 as compensation for emotional distress because we found the evidence insufficient. In Gunby, the only evidence supporting the award consisted of the plaintiff's testimony that he was "very upset," felt he "had been done wrong" and thought he "had been treated unfairly" in being passed over for a promotion. Here, in contrast, Bolden, two of his friends, and his wife and daughter testified that he had changed a great deal in the wake of the drug test administered to him in 1987. Although SEPTA is correct that the record contains insufficient evidence of injury to reputation to sustain an award of damages on that basis, the record does reveal sufficient--though not compelling--evidence of emotional distress attributable solely to the 1987 discharge[2] to support the verdict as representing emotional distress damages. See also Whitley v. Seibel, 676 F.2d 245 (7th Cir.1982).
 
 IV.
 
 24
 Finally, SEPTA argues that even if the evidence of emotional distress was otherwise sufficient, as a matter of law Bolden cannot recover for emotional distress absent expert medical testimony to establish that he actually suffered it. All of the courts of appeals that have expressly considered this issue have held to the contrary.[3] We have not previously addressed this issue. As we explain infra, we are persuaded that the approach taken by our sister circuits which have dispensed with a requirement of expert testimony to corroborate a claim for emotional distress is more consistent with the broad remunerative purpose of the civil rights laws. Accordingly, we now hold that such evidence is not required.[4]
 
 
 25
 A plaintiff in a section 1983 case cannot recover for emotional distress unless he or she presents evidence of "actual injury." Carey v. Piphus, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978); see also Farrar v. Hobby, --- U.S. ----, ----, 113 S.Ct. 566, 573, 121 L.Ed.2d 494 (1992). There is no right to damages other than nominal ones for violation of a constitutional right unless actual injury is proven. Memphis Community School District v. Stachura, 477 U.S. 299, 308, 106 S.Ct. 2537, 2543, 91 L.Ed.2d 249 (1986). This is because civil rights claims are intended to " 'compensate injuries caused by the [constitutional] deprivation.' " Id. at 309, 106 S.Ct. at 2544 (quoting Carey, 435 U.S. at 265, 98 S.Ct. at 1053) (emphasis in Stachura ).
 
 
 26
 In Carey, the Court ruled that a federal court attempting to honor "the principle that a person should be compensated fairly for injuries caused by the violation of his legal rights" should begin with analogous state tort law rules "defining the elements of damages and the prerequisites for their recovery." Carey, 435 U.S. at 257-58, 98 S.Ct. at 1048-49. See also 42 U.S.C. Sec. 1988. The Court instructed that in some cases state tort law will be so analogous that it should be transplanted wholesale into section 1983 law. In others, "the interests protected by a particular constitutional right may not also be protected by an analogous branch of the common law of torts." Id. at 258, 98 S.Ct. at 1049. In the latter areas, the federal court must adapt state rules "to provide fair compensation for injuries caused by the deprivation of a constitutional right."
 
 
 27
 SEPTA urges that this case most closely resembles a common-law action for intentional infliction of emotional distress and that the requirements of proving such a claim be integrated into our section 1983 jurisprudence. Under Pennsylvania law, expert medical evidence must be presented before a plaintiff can recover for intentional infliction of emotional distress. See Williams v. Guzzardi, 875 F.2d 46, 51-52 (3d Cir.1989) (also discussing existence of the tort in Pennsylvania); Kazatsky v. King David Memorial Park, Inc., 515 Pa. 183, 527 A.2d 988 (1987). This is because:
 
 
 28
 The species of tort created by section 46 [of the Restatement (Second) of Torts, defining intentional infliction of emotional distress] provides only the most nebulous definition of "outrageous" conduct. This in turn renders the cause of action one which tends to defy principled adjudication.
 
 
 29
 * * * * * *
 
 
 30
 It is basic to tort law that an injury is an element to be proven. Given the advanced state of medical science, it is unwise and unnecessary to permit recovery to be predicated on an inference based on the defendant's "outrageousness" without expert medical confirmation that the plaintiff actually suffered the claimed distress.
 
 
 31
 Kazatsky, 527 A.2d at 993-95.
 
 
 32
 We disagree that a section 1983 case in which damages for emotional distress are claimed must be analogized to a claim for intentional infliction of emotional distress. This case in particular, as the district court found, more closely resembles a defamation case, although it cannot be strictly analogized to one because, unlike defamation cases, damages cannot be presumed in section 1983 cases. Gunby, 840 F.2d at 1121.
 
 
 33
 Moreover, even if we were to agree that this case most closely resembles an intentional infliction of emotional distress case, we disagree that the methods of proving the elements of such a case must be translated directly to this context. We are to apply state law in section 1983 cases only if doing so is consistent with the Constitution and federal law. 42 U.S.C. Sec. 1988; Burnett v. Grattan, 468 U.S. 42, 48, 104 S.Ct. 2924, 2928-29, 82 L.Ed.2d 36 (1984). Carey 's requirement that actual injury be proven before a plaintiff may recover serves merely to ensure that plaintiffs are not compensated for illusory injury. We must bear in mind that the civil rights laws are intended in part to provide broad, consistent recompense for violations of civil rights. Basista v. Weir, 340 F.2d 74 (3d Cir.1965). See also Burnett, 468 U.S. at 57 n. 18, 104 S.Ct. at 2933 n. 18 (it is anomalous to " 'apply a state policy restricting remedies ... to a federal statute that is designed to augment [them], especially a federal statute that affords remedies for the protection of constitutional rights' ") (quoting Pauk v. Board of Trustees of City University of New York, 654 F.2d 856, 862 (2d Cir.1981)). It is clear enough that this intention would be frustrated if we were to endorse the application of varying levels of proof depending upon the state in which the civil rights action arose. Compare Kazatsky, 527 A.2d at 993-95, with, e.g., Latremore v. Latremore, 584 A.2d 626 (Me.1990) (refusing to require expert medical testimony); cf. Motsenbocker v. Potts, 863 S.W.2d 126, 134-36 (Tex.1993) (affirming verdict for plaintiff on intentional infliction of emotional distress claims based upon testimony of only plaintiff and his wife).[5]
 
 
 34
 In light of the purpose of the civil rights laws we have described, we see no reason to require that a specific type of evidence be introduced to demonstrate injury in the form of emotional distress. See also Carey, 435 U.S. at 263-64, 98 S.Ct. at 1052 ("Distress is a personal injury familiar to the law, customarily proved by showing the nature and circumstances of the wrong and its effect on the plaintiff.... Although essentially subjective, genuine injury in this respect may be evidenced by one's conduct and observed by others."). We are confident that courts and juries can ensure that plaintiffs recover only for actual injury even in the absence of expert medical testimony in such cases. We hold that expert medical evidence is not required to prove emotional distress in section 1983 cases.
 
 V.
 
 35
 In conclusion, the denial of SEPTA's motions for judgment as a matter of law, a remittitur or a new trial was not error. Accordingly, we will affirm the judgment of the district court.
 
 ROTH, Circuit Judge, dissenting:
 
 36
 Because I believe that our opinion in Bolden I precludes Mr. Bolden not only from recovering for lost wages after the date of the settlement between the union and SEPTA, but also from claiming damages that came into being only because of the agreement, I respectfully dissent from the Court's affirmance of the award of damages. While "a verdict must be molded consistently with a jury's answers to special interrogatories when there is any view of the case which reconciles the various answers," Bradford-White Corp. v. Ernst & Whinney, 872 F.2d 1153, 1159 (3d Cir.1989), I cannot conceive of any logical explanation for the jury's allocation of damages that does not include consideration of improper factors.
 
 
 37
 The jury in this case allocated all but one dollar of its $250,001 damage award to the period after the effective date of the settlement. The Court suggests that the verdict can be interpreted as a product of the jury's conclusion that the settlement somehow exacerbated or crystallized the damages Bolden suffered as a result of the unconstitutional drug testing by strengthening the implication that he was a drug user. I believe, however, that such an interpretation impermissibly allows Bolden to recover for damages suffered only as a result of an agreement to which he has been deemed to have consented. That is, because we held in Bolden I that "this settlement had the same effect under labor law and under the Fourth Amendment as if Bolden himself had consented to such future drug testing," Bolden v. Southeastern Pa. Transp. Auth., 953 F.2d 807, 829 (3d Cir.1991) (in banc ) (Bolden I ), Bolden cannot recover damages for emotional distress resulting from the settlement's requirement of future drug testing. Thus, because neither Bolden nor SEPTA has proffered a sensible explanation for the jury's verdict, I would remand the case for a new trial on the issue of damages. Riley v. K Mart Corp., 864 F.2d 1049, 1055 (3d Cir.1988).
 
 SUR PETITION FOR REHEARING
 May 9, 1994
 
 38
 Present: SLOVITER, Chief Judge, BECKER, STAPLETON, MANSMANN, GREENBERG, HUTCHINSON, SCIRICA, COWEN, NYGAARD, ALITO, ROTH and LEWIS, Circuit Judges.
 
 
 39
 The petition for rehearing filed by appellant in the above entitled case having been submitted to the judges who participated in the decision of this court and to all other available circuit judges in regular active service, and no judge who concurred in the decision having asked for rehearing, and a majority of the circuit judges in regular active service not having voted for rehearing by the court in banc, the petition for rehearing is denied.
 
 
 
 [1]
 See also Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Limited, 369 U.S. 355, 364, 82 S.Ct. 780, 786, 7 L.Ed.2d 798 (1962); Motter v. Everest & Jennings, Inc., 883 F.2d 1223, 1230 (3d Cir.1989) ("[i]n reviewing the propriety of a jury verdict, our obligation is to uphold the jury's award if there exists a reasonable basis to do so")
 
 
 [2]
 As previously noted, SEPTA argued in part that any emotional distress Bolden suffered was caused by his being unemployed or "unemployable" after refusing to return to work pursuant to the terms of the settlement. SEPTA also argued that at least part of Bolden's emotional distress was attributable to a previous discharge stemming from an altercation with a SEPTA bus driver
 
 
 [3]
 The United States Court of Appeals for the Seventh Circuit has held that medical evidence or testimony is not required to recover for emotional distress in a section 1983 case. See Busche v. Burkee, 649 F.2d 509, 519 nn. 12, 13 (7th Cir.1981); see also Davet v. Maccarone, 775 F.Supp. 492 (D.R.I.), aff'd 973 F.2d 22 (1st Cir.1992); Ortega v. City of Kansas City, 659 F.Supp. 1201 (D.Kan.1987), rev'd on other grounds 875 F.2d 1497 (10th Cir.1989). Other courts of appeals have permitted recovery for emotional distress for a section 1983 violation based upon plaintiffs' testimony alone, thus impliedly not requiring medical testimony. See Chalmers v. City of Los Angeles, 762 F.2d 753, 761 (9th Cir.1985); Crawford v. Garnier, 719 F.2d 1317 (7th Cir.1983); Williams v. Trans World Airlines, Inc., 660 F.2d 1267, 1272-73 (8th Cir.1981); cf. Biggs v. Village of Dupo, 892 F.2d 1298 (7th Cir.1990) (when plaintiff in a section 1983 claim provides the sole evidence of emotional distress, he or she must reasonably and sufficiently explain circumstances rather than resorting to conclusory testimony). But see Cohen v. Board of Education, 728 F.2d 160, 162 (2d Cir.1984) (concentrating on the difficulty of proving vague, subjective mental distress claims without medical evidence confirming the distress); Nekolny v. Painter, 653 F.2d 1164, 1172-73 (7th Cir.1981) (single statement by a plaintiff that he was depressed, despondent or humiliated is insufficient to award damages for distress, even when considered in context)
 
 
 [4]
 In his concurring opinion in Spence, Judge Higginbotham provided a preview of the result we reach here. See Spence, 806 F.2d at 1203 n. 1 (Higginbotham, J., concurring) ("Had we addressed the issue, ... I would not require testimony of psychologists or psychiatrists in corroboration of a claim for emotional distress. See Busche v. Burkee, 649 F.2d 509, 519, n. 12 (7th Cir.1981) (absence of testimony of medical or psychiatric experts not fatal to emotional distress claim)."). In Spence, as noted previously, we upheld a remittitur of damages awarded for emotional distress because the evidence supporting the award was speculative. We noted that our decision that the evidence was too speculative to support an award eliminated the need to decide another issue presented in that case: whether an award of damages for emotional distress may be supported solely by a plaintiff's own testimony. Id. 806 F.2d at 1201 (citing cases). We did not consider whether medical testimony was required
 
 
 [5]
 We note that the requirement in Pennsylvania itself may be splintering into a case-by-case inquiry. See Hackney v. Woodring, 424 Pa.Super. 96, 622 A.2d 286 (1993), appeal granted 634 A.2d 224 (Pa.1993) (carving inroads into Kazatsky 's expert testimony requirement by ruling that "[t]he greater the outrage, the less should be required of a plaintiff, by way of proof, to establish severe distress"). Even if the Superior Court's decision in Hackney is overruled, we believe its existence illustrates our point: state-by-state differentiations among levels of proof required to establish a claim have no place in federal civil rights law, for they add an unwelcome level of inconsistency