20-860 (L)
*United States v. Ramsey et al.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 29th day of October, two thousand twenty-one.

Present:
>       DEBRA ANN LIVINGSTON,
>               *Chief Judge*,
>       ROBERT D. SACK,
>       DENNY CHIN,
>               *Circuit Judges*.

_____

UNITED STATES OF AMERICA,

>               *Appellee*,

>       v.                                                    20-860, 20-877

MALIEK RAMSEY, AKA "SQUINGE,"

>               *Defendant-Appellant*,

RODNEY MUSCHETTE, AKA "STITCH,"

>               *Defendant-Appellant*.

_____

For Defendant-Appellant Ramsey:        BEVERLY H. VAN NESS, New York, NY.

For Defendant-Appellant Muschette: STACEY VAN MALDEN, *of counsel*, Goldberger & Dubin, P.C., New York, NY.

For Appellee: ELIZABETH GEDDES, (Jo Ann M. Navickas, Patrick Hein, *on the brief*), Assistant United States Attorneys, *for* Mark J. Lesko, Acting United States Attorney, Eastern District of New York, Brooklyn, NY.

Appeal from the judgments of the United States District Court for the Eastern District of New York (Korman, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgments of the district court are **AFFIRMED**.

Defendants-Appellants Maliek Ramsey ("Ramsey") and Rodney Muschette ("Muschette") appeal from the judgments of the U.S. District Court for the Eastern District of New York (Korman, *J.*) entered on March 9, 2020, after a jury found them guilty of murdering a federal witness, 18 U.S.C. §§ 1513(a)(1)(B), 1513(a)(2)(A), and 1111(b). The district court sentenced the Defendants-Appellants to life imprisonment. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.[1]

**A. Sufficiency of the Evidence**

We review challenges to the sufficiency of the evidence and denials of Rule 29 motions for acquittal *de novo*. *See United States v. Harvey*, 746 F.3d 87, 89 (2d Cir. 2014). "A defendant seeking to overturn a jury verdict on sufficiency grounds bears a heavy burden." *United States v. Anderson*, 747 F.3d 51, 59 (2d Cir. 2014) (citations and internal quotation marks omitted). When assessing a sufficiency challenge to a guilty verdict, we must "view the evidence in the light most favorable to the government, crediting every inference that could have been drawn in the

---

[1] Ramsey and Muschette join in each other's arguments that are not inconsistent with their own. *See* Fed. R. App. P. 28(i).

government's favor, and deferring to the jury's assessment of witness credibility, and its assessment of the weight of the evidence." *United States v. Vargas-Cordon*, 733 F.3d 366, 375 (2d Cir. 2013) (citations and internal quotation marks omitted). We will uphold the conviction if "*any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.*" *United States v. Coplan*, 703 F.3d 46, 62 (2d Cir. 2012) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

In this case, sufficient evidence supported the Defendants-Appellants' convictions for retaliation murder, 18 U.S.C. §§ 1513(a)(1)(B), 1513(a)(2)(A), 2 and 3551 *et seq*. In order to convict the Defendants-Appellants of aiding and abetting a retaliatory murder, the government was required to prove that each defendant took "an affirmative act in furtherance of" retaliatory murder, "with the intent of facilitating the offense's commission." *United States v. Delgado*, 972 F.3d 63, 73 (2d Cir. 2020) (quoting *Rosemond v. United States*, 572 U.S. 65, 71 (2014)). At trial, the government's theory was that Ramsey enlisted Muschette to murder fellow Eight Trey Crips gang member Nashwad Johnson ("Johnson") on December 31, 2008. The government argued that the murder came in the wake of an open-court statement made by Larry Pagett ("Pagett"), the leader of the Eight Trey Crips, at his sentencing hearing on December 30, 2008, revealing that Johnson had been cooperating against the gang. Ample evidence introduced at trial supported this theory, including phone records, which showed that Ramsey received a call from Pagett's sister immediately after the sentencing. On a recorded phone line, Pagett's sister later stated that she told Ramsey about Johnson's cooperation and that Ramsey was upset about it. Phone records also showed that Ramsey spoke with Muschette immediately after speaking with Pagett's sister. The evidence introduced at trial further included cell phone data placing Muschette at the location where Johnson's body was recovered, and phone records showing that Ramsey spoke to Muschette

on the evening of the murder and that Muschette called Ramsey repeatedly in the middle of the night shortly after the murder until finally making contact. Anthony Braithwaite ("Braithwaite"), another gang member, testified at trial that he witnessed the murder, that Muschette explained to him how he murdered Johnson, and that Ramsey admitted to organizing the murder when he visited Braithwaite in prison. Other evidence included a 2012 tweet in which Ramsey referred to himself as a "Certified Rat Killer" and made other threats about "rats"; Muschette's false denial upon arrest that he was in Atlanta at the time of the murder; as well as testimony from Braithwaite and another gang member, Godfrey Grant ("Grant"), that gang members had been waiting for concrete proof of Johnson's cooperation, which they received at Pagett's sentencing, before taking action against Johnson. This evidence was in no sense "so meager that no reasonable jury could find guilt beyond a reasonable doubt." *United States v. Guadagna*, 183 F.3d 122, 130 (2d Cir. 1999) (citations and internal quotation marks omitted).

Ramsey nonetheless argues that the evidence did not adequately show that he took an affirmative step in support of the murder as required for accomplice liability. That argument fails, however, because the jury was entitled to credit Braithwaite's testimony that Ramsey organized the murder as well as to infer, from both the phone record evidence showing Ramsey's communications with Pagett's sister about Johnson's cooperation and Ramsey's phone calls with Muschette before and after the murder, that Ramsey arranged Johnson's murder with Muschette and other gang members. Ramsey also admits that he had a contingency plan with another individual present at the scene to murder both Muschette and Johnson if Muschette did not carry out the murder plan. *See Delgado*, 972 F.3d at 74 (explaining that the affirmative act requirement for accomplice liability is a "low hurdle" covering "all assistance rendered by words, acts, encouragement, support, or presence" (citations and internal quotation marks omitted)). Ramsey's

arguments that Braithwaite's testimony was inconsistent and incredible also do not assist him. "Assessments of witness credibility and choices between competing inferences lie solely within the province of the jury." *United States v. Payne*, 591 F.3d 46, 60 (2d Cir. 2010); *see also United States v. Miller*, 116 F.3d 641, 676 (2d Cir. 1997) ("[W]here there are conflicts in the testimony, we must defer to the jury's resolution of the weight of the evidence and the credibility of the witnesses." (citations omitted)). In this case, Ramsey points to potential discrepancies concerning cell locations that are not sufficiently serious to render Braithwaite's testimony "incredible on its face," or in "def[iance of] physical realities." *United States v. Truman*, 688 F.3d 129, 139 (2d Cir. 2012) (citations and internal quotation marks omitted). Accordingly, we reject the Defendants-Appellants' sufficiency challenge.

**B. New Trial Motion**

"We review for abuse of discretion the district court's denial of a motion for a new trial." *United States v. Josephberg*, 562 F.3d 478, 488 (2d Cir. 2009) (citations omitted). Rule 33(a) provides that on "the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). "In determining whether to grant a Rule 33 motion, the ultimate test is whether letting a guilty verdict stand would be a manifest injustice," *United States v. Walker*, 974 F.3d 193, 208 (2d Cir. 2020) (alteration, citations, and internal quotation marks omitted), and courts must take care not to usurp the role of the jury in resolving conflicting evidence and assessing witness credibility, *see United States v. Ferguson*, 246 F.3d 129, 133–34 (2d Cir. 2001) (Walker, C.J., concurring in part and dissenting in part) (explaining that courts may only "intrude upon the jury function of credibility assessment" "where exceptional circumstances can be demonstrated" (citations and internal quotation marks omitted)). To order a new trial, "[a] court must have a real concern that an innocent person may have been

convicted in light of the evidence presented and the credibility of the witnesses." *Walker*, 974 F.3d at 208 (citations and internal quotation marks omitted).

In this case, strong circumstantial evidence, supported by witness testimony, implicated the Defendants-Appellants in Johnson's murder. Braithwaite's testimony was corroborated in several respects, including through the Defendants-Appellants' and their co-conspirators' cell phone records around the time of the murder, cell phone location data showing Muschette in proximity to the murder scene, the medical examiner's testimony, testimony about the Eight Trey Crips gang from other gang members, and Muschette's false denial that he was in Atlanta on the day of the murder. Moreover, to the extent that the Defendants-Appellants challenge Braithwaite's credibility, that issue, as well as the Defendants-Appellants' argument that there was other information suggesting Johnson's cooperation prior to December 2008, was placed squarely before the jury. Accordingly, we affirm the district court's denial of the Defendants-Appellants' Rule 33 motion.

## C. *Brady v. Maryland*

Where defendants raise *Brady v. Maryland* challenges as bases for a Rule 33 motion, we review the denial of that motion for abuse of discretion. 373 U.S. 83 (1983); *see United States v. Middlemiss*, 217 F.3d 112, 122 (2d Cir. 2000). Under *Brady*, "the Government has a constitutional duty to disclose favorable evidence to the accused where such evidence is 'material' either to guilt or to punishment." *United States v. Jackson*, 345 F.3d 59, 70 (2d Cir. 2003) (citations and internal quotation marks omitted). To demonstrate a *Brady* violation, a defendant must show that "(1) the Government, either willfully or inadvertently, suppressed evidence; (2) the evidence at issue is favorable to the defendant; and (3) the failure to disclose this evidence resulted in prejudice." *United States v. Coppa*, 267 F.3d 132, 140 (2d Cir. 2001) (citing *Strickler v. Greene*, 527 U.S. 263,

281–82 (1999)). "[E]vidence is not considered to have been suppressed within the meaning of the *Brady* doctrine if the defendant or his attorney either knew, or should have known, of the essential facts permitting him to take advantage of that evidence." *United States v. Payne*, 63 F.3d 1200, 1208 (2d Cir. 1995) (alteration, citations, and internal quotation marks omitted).

Here, the belatedly disclosed call tapes were neither "suppressed" nor material to the defense's case. The alleged *Brady* material included information suggesting that Grant viewed Johnson as a "snitch" and referred to him as such in two rap songs; that Grant may have played some role in helping to orchestrate the murder; that Grant had a relationship with a member of another gang; and that Grant and Pagett had a rift after Johnson's murder regarding something Grant did with a member of the other gang. However, because Defendants-Appellants had access to this information prior to trial, it was not suppressed for *Brady* purposes. *See id.*; *United States v. Diaz*, 922 F.2d 998, 1007 (2d Cir. 1990). Indeed, the Defendants-Appellants also knew much of this information, including the fact that Grant's girlfriend was the brother of a member of another gang, that a member of the other gang had driven Johnson to Atlanta before the murder, and that one of the participants in the murder was a member of that gang.

While the Defendants-Appellants may not have reasonably known that Pagett was angry with Grant for some reason, this fact, like the other facts just mentioned, was not in any case "material" to the Defendants-Appellants' defense as there is no reasonable probability that the introduction of this evidence would have altered the verdict. *See Youngblood v. West Virginia*, 547 U.S. 867, 870 (2006) (per curiam) (explaining that the standard for materiality is whether the favorable evidence can "reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict" (citations and internal quotation marks omitted)). Indeed, while the Defendants-Appellants argue that the evidence supported a theory that Grant and others

7

were involved, the jury would have been required to make a series of untenable inferences in order to reach the conclusion that Muschette and Ramsey were not themselves responsible, discarding the cell phone location data and other evidence in favor of a theory supported by no concrete evidence. *See United States v. Cacace*, 796 F.3d 176, 184 (2d Cir. 2015) (explaining that the "participation of additional people in the murder [wa]s not inconsistent with the government's account of the . . . murder"). The calls also did not provide material for impeachment of Grant's testimony as Grant focused mainly on the organization of the gang and its knowledge about Johnson's cooperation. Moreover, the defense had significant opportunity to cross-examine Grant, particularly about the lyrics of his rap videos, which it did not do. In sum, the district court did not abuse its discretion in finding no *Brady* violation and accordingly denying the Defendants-Appellants' Rule 33 motion.

**D. Admission of Evidence**

"We review evidentiary rulings for abuse of discretion." *United States v. Mercado*, 573 F.3d 138, 141 (2d Cir. 2009) (citations omitted). An "[a]buse of discretion occurs when the court acts in an arbitrary and irrational manner." *United States v. McCallum*, 584 F.3d 471, 474 (2d Cir. 2009) (citations and internal quotation marks omitted). A district court's decision to admit evidence is subject to harmless error analysis. *See* Fed. R. Crim. P. 52(a); *United States v. Madori*, 419 F.3d 159, 168 (2d Cir. 2005). An error is harmless if it "did not affect the defendant's substantial rights or influence the jury's verdict." *United States v. Tubol*, 191 F.3d 88, 96–97 (2d Cir. 1999).

**1. Sentencing Letter**

The Defendants-Appellants first challenge the admission of Pagett's sentencing letter. Evidence is admissible if relevant. Fed. R. Evid. 402. "Evidence is relevant if 'it has any tendency

to make a fact more or less probable than it would be without the evidence' and if 'the fact is of consequence in determining the action.'" *United States v. Monsalvatge*, 850 F.3d 483, 494 (2d Cir. 2017) (quoting Fed. R. Evid. 401). "A district court 'may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice.'" *Id.* (citing Fed. R. Evid. 403). "[W]e accord great deference to the district court's assessment of the relevancy and unfair prejudice of proffered evidence." *United States v. Quinones*, 511 F.3d 289, 310 (2d Cir. 2007) (citations and internal quotation marks omitted). We will disturb a district court's determination as to Rule 403 "only if it is arbitrary or irrational." *United States v. Kadir*, 718 F.3d 115, 122 (2d Cir. 2013) (citations and internal quotation marks omitted).

Here, the sentencing letter, in combination with other evidence, tended to make more probable the factual inference that Ramsey and Muschette had carried out the murder after receiving confirmation of Johnson's cooperation. *See* Fed. R. Evid. 401. Braithwaite testified that Muschette told him on the trip home from Atlanta after Johnson's murder that he had received "paperwork" on his phone concerning Johnson's cooperation. Braithwaite and Grant also testified that they and other gang members had previously given Johnson the benefit of the doubt as to rumors about his cooperation and needed more proof. The fact that the government did not adduce proof that the letter reached Ramsey or Muschette did not render the evidence irrelevant, nor did the fact that Defendants-Appellants presented countervailing evidence that gang members suspected Johnson's cooperation at an earlier period. Moreover, the sentencing letter did not have much potential to give rise to a "strong emotional or inflammatory impact" that would "distract the jury from the issues in the case" and "arouse the jury's passions to a point where they would act irrationally in reaching a verdict." *Monsalvatge*, 850 F.3d at 495 (citations and internal quotation marks omitted). Accordingly, we find no abuse of discretion by the district court.

## 2. Prior Bad Acts

Muschette next challenges the admission of the Defendants-Appellants' prior drug dealings, including evidence of a law enforcement stop in December 2008 in which Muschette and another gang member were found transporting $16,000 in cash and statements made by Johnson to law enforcement about Ramsey's gang and drug dealings. While admission of "[e]vidence of any other crime, wrong, or act" is inadmissible "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," Fed. R. Evid. 404(b)(1), such evidence is allowed where it is introduced for another purpose, Fed. R. Evid. 404(b)(2); *Huddleston v. United States*, 485 U.S. 681, 685 (1988). When reviewing the admission of evidence under Rule 404(b), "we consider whether: (1) the prior act evidence was offered for a proper purpose; (2) the evidence was relevant to a disputed issue; (3) the probative value of the prior act evidence substantially outweighed the danger of its unfair prejudice; and (4) the court administered an appropriate limiting instruction." *United States v. Garcia*, 291 F.3d 127, 136 (2d Cir. 2002) (citations omitted). "Since a district court is in the best position to evaluate the evidence and its effect on the jury," we will not overturn a district court's Rule 404(b) ruling "absent a clear showing of abuse of discretion." *United States v. Pitre*, 960 F.2d 1112, 1119 (2d Cir. 1992) (citations omitted).

In this case, prior to admitting the "other act" evidence, the district court heard Braithwaite and an officer involved in the police stop testify. The district court reasoned that the "other act" evidence was offered for a proper purpose relevant to disputed issues as it helped show relationships within the gang, as well as Pagett's motivation for removing Johnson. *See United States v. Diaz*, 176 F.3d 52, 79 (2d Cir. 1999) (explaining that prior act evidence is admissible "to inform the jury of the background of the conspiracy charged, in order to help explain how the

illegal relationship between participants in the crime developed, or to explain the mutual trust that existed between coconspirators" (citations and internal quotation marks omitted)); *United States v. Roldan-Zapata*, 916 F.2d 795, 804 (2d Cir. 1990) (finding prior act evidence admissible "to help explain to the jury how the illegal relationship between participants in the crime developed" and "how the instant transaction came about and their role in it" (alterations, citations, and internal quotation marks omitted)). The district court also reasonably exercised its discretion in concluding that the danger of unfair prejudice did not outweigh the probative value of this evidence. *See United States v. Bermudez*, 529 F.3d 158, 161–62 (2d Cir. 2008). As this case involved considerably more serious activities than drug dealing, *see Pitre*, 960 F.2d at 1120, it was unlikely that the evidence would have had an "adverse effect upon [the Defendants-Appellants] beyond tending to prove the fact or issue that justified its admission into evidence," *United States v. Massino*, 546 F.3d 123, 132 (2d Cir. 2008) (citations and internal quotation marks omitted). Accordingly, we find no abuse of discretion in the admission of the prior drug dealings evidence.

### 3. Pagett's Tattoo

The Defendants-Appellants next challenge the admission of a photograph of Pagett's tattoo. Under Rule 804(b)(3), the hearsay rule does not exclude evidence of a statement against an unavailable declarant's penal interest if the statement is one that: "(A) a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it . . . had so great a tendency . . . to expose the declarant to . . . criminal liability; and (B) is supported by corroborating circumstances that clearly indicate its trustworthiness, if it is offered in a criminal case as one that tends to expose the declarant to criminal liability." Fed. R. Evid. 804(b)(3); *see United States v. Williams*, 506 F.3d 151, 155 (2d Cir. 2007).

11

Here, the district court properly determined that Pagett was unavailable as a witness after Pagett's counsel indicated that Pagett would invoke his Fifth Amendment rights. The district court also determined that the statement was relevant and "clearly an admission against interest," Gov't App'x at 231, and that the "likely inference" was that the individual depicted hanging in the noose was Johnson. Accordingly, the admission of the tattoo evidence was not an abuse of discretion. *See United States v. Ojudun*, 915 F.3d 875, 885 (2d Cir. 2019).

### 4. Post-Arrest Statements

Muschette further argues that the district court abused its discretion in admitting statements he made post-arrest. To prove that a defendant validly waived his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), the government bears the burden of showing that the defendant's relinquishment of his rights was (1) "knowing," meaning "the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it," and (2) "voluntary," meaning "that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." *United States v. Murphy*, 703 F.3d 182, 192 (2d Cir. 2012) (citations and internal quotation marks omitted). A "waiver need not have been express; 'courts can infer a waiver of *Miranda* rights from the actions and words of the person interrogated.'" *United States v. O'Brien*, 926 F.3d 57, 73 (2d Cir. 2019) (quoting *Berghuis v. Thompkins*, 560 U.S. 370, 387 (2010)). When reviewing a denial of a motion to suppress, "we review legal conclusions de novo and findings of fact for clear error." *United States v. Bershchansky*, 788 F.3d 102, 108 (2d Cir. 2015) (citations and internal quotation marks omitted). We will reverse the district court only where its determinations are "clearly erroneous." *United States v. Iverson*, 897 F.3d 450, 459 (2d Cir. 2018) (citations and internal quotation marks omitted).

12

In response to Muschette's suppression challenge, the district court held a suppression hearing at which Agent Campbell and Muschette testified. The district court thereafter determined that Muschette waived his right to remain silent, crediting Agent Campbell's testimony. Moreover, the conclusion that Muschette acted voluntarily was a "reasonable view of the evidence" that was not clearly erroneous. *United States v. Spencer*, 995 F.2d 10, 11 (2d Cir. 1993) (per curiam) (citations and internal quotation marks omitted). Accordingly, we reject the suppression challenge.

### 5. Proffer Statements

The Defendants-Appellants also challenge the admission of statements made by Johnson to the police. Under Rule 804(b)(6), the hearsay rule does not require the exclusion of "[a] statement offered against a party that wrongfully caused—or acquiesced in wrongfully causing— the declarant's unavailability as a witness, and did so intending that result." Fed. R. Evid. 804(b)(6). "[T]he government has the burden of proving by a preponderance of the evidence that (1) the defendant (or party against whom the out-of-court statement is offered) was involved in, or responsible for, procuring the unavailability of the declarant through knowledge, complicity, planning or in any other way, and (2) the defendant (or party against whom the out-of-court statement is offered) acted with the intent of procuring the declarant's unavailability as an actual or potential witness." *United States v. Dhinsa*, 243 F.3d 635, 653–54 (2d Cir. 2001) (citations and internal quotation marks omitted). "The government need not, however, show that the defendant's sole motivation was to procure the declarant's absence; rather, it need only show that the defendant was motivated *in part* by a desire to silence the witness." *Id.* at 654 (citations and internal quotation marks omitted). We review the district court's admission for abuse of discretion. *Id.* at 649.

Here, the evidence sufficiently demonstrated that Ramsey and Muschette were "involved in, or responsible for, procuring [Johnson's] unavailability" as a witness and that the Defendants-

Appellants "acted with the intent of procuring [Johnson's] unavailability as an actual or potential witness." *Id.* at 653–54. The record suggested that the Defendants-Appellants aimed to prevent Johnson from further cooperation against the gang, including in relation to ongoing investigations of the gang's headquarters at an apartment complex. Accordingly, there was no abuse of discretion in the admission of Johnson's statements.

### E. Confrontation Clause

The Defendants-Appellants also challenge limits imposed by the district court on their cross-examination. Under the Confrontation Clause, a criminal defendant must be afforded a "meaningful opportunity to cross-examine witnesses against him." *Brinson v. Walker*, 547 F.3d 387, 392 (2d Cir. 2008) (citing *Pennsylvania v. Ritchie*, 480 U.S. 39, 51 (1987) (plurality opinion)). "The Confrontation Clause does not, however, guarantee unfettered cross-examination." *Alvarez v. Ercole*, 763 F.3d 223, 230 (2d Cir. 2014) (citations omitted). "A trial judge retains 'wide latitude' to restrict cross-examination 'based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Corby v. Artus*, 699 F.3d 159, 166 (2d Cir. 2012) (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)). A defendant's confrontation rights are not violated as long as "the jury is in possession of facts sufficient to make a 'discriminating appraisal' of the particular witness's credibility." *United States v. Roldan-Zapata*, 916 F.2d 795, 806 (2d Cir. 1990) (quoting *United States v. Singh*, 628 F.2d 758, 763 (2d Cir. 1980)). We review challenges to a district court's imposition of limits on cross-examination for abuse of discretion. *See United States v. Treacy*, 639 F.3d 32, 42 (2d Cir. 2011).

In this case, the district court properly exercised its discretion in granting the government's objections to questions posed by defense counsel to Agent Campbell. As for the Defendants-

Appellants' first challenge, concerning evidence of Muschette and Tanya Pagett's contact, the district court properly determined that the defense's question called for speculation about matters about which the witness did not have personal knowledge. *See* Fed. R. Evid. 602; *United States v. Afriyie*, 929 F.3d 63, 69 (2d Cir. 2019). As for their second challenge, concerning Braithwaite's presence at the scene of the murder, the district court also did not err in refusing to permit Agent Campbell to answer a question that was argumentative and overly broad. In relation to the third challenge, the district court reasonably denied the defense's attempt to elicit that Johnson had told Agent Campbell about a previous attempt to shoot him, which the court noted was not relevant, and which was hearsay. In relation to the fourth challenge, the district court further did not err in precluding the defense from exploring the government's knowledge of Grant's claim that he had pled guilty to racketeering, which the defense hoped would demonstrate the government's "complicit[y]" in Grant's perjury. Gov't App'x at 266. As for the fifth challenge, the district court did not err in sustaining objections to questions about Grant's knowledge of the types of people who buy "gangster rap," and in any case, permitted questioning resulting in the introduction of similar evidence. Lastly, the district court did not err in denying the Defendants-Appellants an opportunity to cross-examine Braithwaite about whether he had made a required payment connected with his sentencing and whether he knew the reasons for a particular sentencing requirement, which the district court determined was irrelevant. Accordingly, the Defendants-Appellants' Confrontation Clause rights were not violated.[2]

---

[2] We also reject Ramsey's challenge that the prosecution committed misconduct. "[A] defendant who seeks to overturn his conviction based on alleged prosecutorial misconduct in summation bears a heavy burden." *United States v. Farhane*, 634 F.3d 127, 167 (2d Cir. 2011) (citations and internal quotation marks omitted). In relation to summation comments, a defendant "must show more than that a particular summation comment was improper," and indeed "that the comment, when viewed against the entire argument to the jury and in the context of the entire trial, was so severe and significant as to have substantially prejudiced him, depriving him of a fair trial." *Id.* (citations and internal quotation marks omitted). Here, none of the

* * *

We have considered the Defendants-Appellants' remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgments of the district court.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk of Court

---

statements that Ramsey objects to—some of which he objected to at trial and some of which he did not—constitutes prosecutorial misconduct, let alone misconduct amounting to a violation of the right to a fair trial. For similar reasons, we also conclude that the Defendants-Appellants' claims, even taken cumulatively, do not amount to prejudice. *See In re Terrorist Bombings of U.S. Embassies in E. Afr.*, 552 F.3d 93, 146–47 (2d Cir. 2008).